### SUSAN MUNIGLE *vs.* CITY OF BOSTON.

The estate of a tenant who holds a house under a lease for years, which contains this clause: "It is also agreed that if the lessor shall sell the said house, or that the city shall cut off said premises, that the said tenant shall consent thereto, and that the said tenant shall do all repairs at his expense," is determined, if the city cuts off the premises; and the tenant can recover no damages of the city for the injury done thereby.

PETITION to the superior court for Suffolk county, applying for a jury to estimate the damages sustained by the petitioner by the widening of North Street, in Boston, the mayor and aldermen of the city having adjudged that she was not entitled to any damages. In the superior court, *Allen*, C. J. sustained a demurrer to the petition, the allegations of which are sufficiently stated in the opinion, and ordered judgment for the respondents. The petitioner alleged exceptions.

*C. P. Huntington*, for the petitioner.

*G. E. Betton*, for the respondents.

HOAR, J. The right of the petitioner to maintain her suit depends upon the question whether any estate or interest of hers was taken or diminished in value by the city of Boston in

widening North Street; and as she has set out fully in her petition the only estate which she claims, this question is distinctly presented by the demurrer.

The petitioner was lessee of a house in North Street, in Boston, which she held under a lease for seven years in the usual form, containing the usual covenants, and among them a covenant to deliver up the premises at the end of the lease in as good order and condition as they then were or should be put into by the lessor, reasonable use and wear, fire and other unavoidable casualties excepted. Immediately following the description of the demised premises, the lease contained this clause : " It is also agreed that if the lessor shall sell the said house, or that the city shall cut off said premises, that the said Susan shall consent thereto, and that the said Susan shall do all repairs at her expense." The respondents contend that the effect of this clause was, to terminate the lease when the city took a part of the land for the purpose of widening the street ; and that she had therefore no estate in the premises taken which could entitle her to damages.

Literally construed, the first part of this agreement would seem to be wholly superfluous and useless. The landlord could sell his estate as well without her consent as with it ; and the city could cut off any part of the demised premises for a street under authority of law, notwithstanding any objections of hers, if in either event her rights under the lease were to continue unimpaired. But although the parties have not made use of accurate or apt terms to express their meaning, we think that, applying the language to the subject matter, their intention can be ascertained with reasonable certainty.

The lessor contemplated two contingencies as likely to occur during the term. The first of these was, that he might wish to sell the estate. An unexpired lease would be an obstacle to such a sale. He provides, therefore, that if he shall sell the house, the tenant " shall consent thereto ; " a provision obviously not intended to be simply nugatory, and to leave his rights, and those of his vendee, exactly the same as if nothing had been said on the subject; but on the contrary, inserted with a view

to facilitate the sale, and make it complete and effectual. It speaks of a sale of " the house," and not merely of his reversionary interest in it. And we think the just construction of this part of the agreement is, that the lessee should consent to the sale being carried into effect to the same extent as if the lease had not been made ; that is, that in case of a sale the lease, and her estate in the premises, should thereupon cease and determine.

The other contingency contemplated was the cutting off by the city of the premises for the purpose of widening the street. It is obvious that such a proceeding might very materially change the relation of both landlord and tenant to the premises demised. The tenant was to make all repairs during the term. But the taking by the city might destroy a considerable part of the house, and make the mere repairing it, for the use to which it had been previously devoted, impracticable. It might require to be wholly rebuilt or remodelled. In settling with the city for damages, the entire control of the estate, and the power to sell unincumbered the whole or any part of it, would be important to the lessor. The retaining by the lessee of the part which was left during the term, might make that part substantially worthless for that period. No provision is made for any apportionment of rent for the loss of the part which was taken. We find the consequence which was to follow, in case of a " cutting off" by the city, included in the same sentence, and expressed in the same words, with that which was to follow a sale of the estate. We think it should have, and that the parties intended it should have, the same meaning in both cases. The lessee has agreed to " consent thereto." The proceeding is to go on, as if there had been no lease to complicate it. The lessor is to settle for the whole injury to the estate, as if it had been in his own possession. When the city " cut off" the premises for the street, the lease by that event was determined.

The objection that this was a contract between the landlord and tenant, and that the defendants cannot avail themselves of it, cannot be supported, because in order to assess damages for the plaintiff, it is necessary to inquire what estate she had in

the land taken. And it is competent for the defendants to show, or to avail themselves of the fact when shown by the plaintiff, that she had no estate which would entitle her to any damages. *Demurrer sustained.*