**UNITED STATES v. PETTY MOTOR CO., and six other cases.**

Nos. 2820–2826.

Circuit Court of Appeals, Tenth Circuit.

March 5, 1945.

Wilma C. Martin of Washington, D. C. (Norman M. Littell, Asst. Atty. Gen., Dan B. Shields, U. S. Atty., of Salt Lake City, Utah, and Vernon L. Wilkinson, Atty., Department of Justice, of Washington, D. C., on the brief), for appellant.

Shirley P. Jones, of Salt Lake City, Utah (Benjamin L. Rich and Gordon R. Strong, both of Salt Lake City, Utah, on the brief), for appellees William G. Grimsdell and others.

Before PHILLIPS and MURRAH, Circuit Judges, and RICE, District Judge.

RICE, District Judge.

On November 9, 1942, the government, acting by authority of the Second World War Powers Act of March 27, 1942, 56 Stat. 176, 177, 50 U.S.C.A. § 632, instituted a proceedings in rem to condemn and take possession of a leasehold interest in a certain building located in Salt Lake City, Utah, and known there as the old Terminal Building. The leasehold interest taken gave the United States immediate possession and the right to occupy same as lessee until June 30, 1945, with the right to surrender possession on June 30, 1943, or June 30, 1944, by giving sixty days' notice. The building was owned by W. B. Richards, but was occupied by various tenants, and all of the tenants were made parties to the condemnation proceedings.

On November 10, 1942, the government was granted immediate possession, and the tenants were ordered to vacate between November 17th and December 1st.

Of the appellees here, five of them, towit, The Galigher Company, Grocer Printing Company, Chicago Flexible Shaft

Company, Brockbank Apparel Company, and Gray-Cannon Lumber Company, had no written leases but were in possession and occupied the premises under oral contracts on a month to month basis. They were long-time tenants—that is, they had occupied the same premises under the same arrangements with the owner over a long period of time. The arrangement was mutually satisfactory to the tenants and to the owner, and each of the tenants was a satisfactory tenant to the owner. As to each of the oral contracts or leases it is admitted that the owner had the right to terminate said leases under the law of Utah upon giving the required notice. The facts, however, are that the owner gave no such notice. So regardless of what could have been done, each tenant under the oral lease had every reason to think he could remain indefinitely as a tenant, and the record justifies the conclusion that each would have continued for an indefinite period had not the government begun condemnation proceedings.

The Independent Pneumatic Tool Company occupied its space under a five-year written lease. A new lease for a period of five years, beginning December 1, 1942, had been signed by both the owner and the tenant. This lease contained a provision that the term and all rights under the lease would terminate if possession of the premises was taken by a federal, state, or other public authority for public use.

The Petty Motor Company had a written lease on the basement of the building for a term of one year beginning August 1, 1942, with the right to renew for another year.

Before the trial of the cause the government completed negotiations for a lease of the entire building from the owner for a term ending June 30, 1943, with the right of renewal each year for a period of ten years thereafter. The fact that this lease had been procured from the owner by the government developed during the trial. Whereupon, the tenants moved to dismiss as to the owner. The government concurred in this motion, and the court dismissed the proceedings as to the owner. The record discloses that the negotiated lease made no mention of the rights, if any, of the tenants. Admittedly, the negotiated lease and the sum paid to the owner for it made no provision and included no sum as compensation for the interest of the tenants that was taken.

The government took the position below, and adheres to it here, that the amount of the recovery was limited to the value of the occupancy as a unit, to be paid in one lump sum to the owner of the building. That thereafter it, the government, was not interested in the respective claims of the tenants and that their claims and rights, if any, were against the award which would be distributed as their interest might appear.

The trial court disagreed with the government's theory. Upon the trial the court permitted evidence on behalf of each tenant of the costs of moving out of the building, remodeling the new premises, reinstalling their equipment, and the increased rents they were required to pay. Witnesses for the tenants acquainted with rental values, after hearing the testimony concerning costs of moving, etc., and being told that they might consider such costs solely for the purpose of determining value, were then permitted to testify as to the value of the tenants' "right of occupancy".

The government's evidence as to value of the interest of each particular tenant was to the effect that the rental being paid by the tenant at the time of his ouster was the reasonable rental value of the space occupied by him. This evidence of the government referred to vacant space considered from a competitive rental standpoint. Under the theory of the government and its evidence none of the ousted tenants was entitled to any compensation.

The cause was submitted to the jury under instructions to the effect that in determining the just compensation to be paid each tenant for his right of occupancy they might consider the evidence as to the costs of moving, remodeling, reinstalling equipment, and increased rents. That while these items were not recoverable as such, yet they were proper to consider with all the other evidence in determining the value of their right of occupancy or the just compensation which should be paid to each tenant.

These appeals are concerned primarily with the correctness of the trial court's instructions, which means in its final analysis that these appeals are concerned with the proper method of determining what is "just compensation" as the term is used in the Fifth Amendment of the Constitu-

914

tion, under the facts and circumstances of this case.

■ The contention of the government that a month to month lease is not property within the meaning of the Constitutional Amendment is foreclosed by the decision of the Supreme Court in the recent case of United States v. General Motors Corporation, 65 S.Ct. 357 360, (hereinafter referred to as the General Motors Case), wherein it is stated: "The right to occupy, for a day, a month, a year, or a series of years, in and of itself and without reference to the actual use, needs, or collateral arrangements of the occupier, has a value."

The government now contends that the General Motors Case in no way affects or changes the rule originally contended for as to the manner of determining just compensation for the tenants under the facts of this case.[1] The difference in the General Motors Case and the present case is that in the General Motors Case the government was carving out of a long-term lease owned by General Motors a lease for a short term; whereas, in this case the lease acquired by the government was for a term extending beyond the expiration of the lease owned by each of the tenants, with the exception of the lease owned by the Independent Pneumatic Tool Company, and possibly with the exception of the lease owned by the Petty Motor Company.

■■ The rule announced in a long line of decisions relied upon by the government denies "consequential damages" when the fee simple title is taken; and the term "consequential damages" comprehends such items as cost of moving, cost of reinstalling equipment, increased rents, etc. In the General Motors Case the Supreme Court was concerned with the adequacy of that well-established rule as applied to a case wherein less than the fee simple title is involved. While adhering to such rule when fee simple title is taken, the court rejected such rule as controlling when less than the fee simple title is taken— for example, when only a leasehold estate is taken. The basic principles announced in the General Motors Case are not confined to the narrow facts involved therein. We are convinced that the principles announced therein are controlling under the facts as presented here. Otherwise, the government would in this case convert the Fifth Amendment from a guarantee of just compensation into an instrument of confiscation.

The verdict as to each tenant was much less than the amount claimed—much less than the value of the respective interests as fixed by their witnesses. None of the tenants has appealed.

The record in this case shows that the learned trial judge approached the solution of this case in substantial conformity with the principles announced in the General Motors Case. No doubt if he had had the benefit of the law as announced therein he would have framed his instructions in more precise and accurate language, but when we consider substance rather than form no error is found in the instructions.

The judgment of the trial court is affirmed.

[1] The contention of the government is based upon a long line of cases determining the method of computing just compensation where the fee simple title was taken: Silberman v. United States, 1 Cir., 131 F.2d 715; United States v. Dunnington, 146 U.S. 338, 13 S.Ct. 79, 36 L.Ed. 996; Duckett & Co. v. United States, 266 U.S. 149, 45 S.Ct. 38, 69 L. Ed. 216; Carlock v. United States, 60 App.D.C. 314, 53 F.2d 926; United States v. Miller, 317 U.S. 369, 63 S.Ct. 276, 87 L.Ed. 336; United States v. Powelson, 319 U.S. 266, 63 S.Ct. 1047, 87 L.Ed. 1390; Monongahela Navigation Co. v. United States, 148 U.S. 312, 13 S.Ct. 622, 37 L.Ed. 463; Mitchell v. United States, 267 U.S. 341, 45 S.Ct. 293, 69 L.Ed. 644; Joslin Co. v. City of Providence, 262 U.S. 668, 43 S.Ct. 684, 67 L.Ed. 1167; Potomac Electric Power Co. v. United States, 66 App.D.C. 77, 85 F.2d 243; and the old case of Gershon Bros. Co. v. United States, 5 Cir., 284 F. 849, the reasoning of which case was rejected in the General Motors Case.