**UNITED STATES v. 8286 SQ. FT. OF SPACE IN PACA–PRATT BLDG., CITY OF BALTIMORE, MD., et al.**

Civ. No. 2260.

District Court, D. Maryland.

July 25, 1945.

Wilmer H. Driver, Sp. Asst. to Atty. Gen., and Milton W. Schlutter, Sp. Atty., Dept. of Justice, for plaintiffs.

Frank B. Ober (of Ober, Williams & Stinson), of Baltimore, Md., for defendants.

CHESNUT, District Judge.

In this federal condemnation case the government had taken under the Second War Powers Act of 1942, 50 U.S.C.A. Appendix § 631 et seq., and on June 17, 1944 occupied, 8286 square feet of space on the 8th floor of the Paca-Pratt Building

(heretofore known as the Sonneborn Building) in the City of Baltimore, for office use by the Baltimore Cargo Port of Embarkation. The term for which the space was originally taken was for a term of years ending June 30, 1945, which, however, by notice duly given and filed in this proceeding with deposit of agreed upon rental, has now been extended until June 30, 1946. At the time the government took possession of the office space it was under lease from the owner, The Paca-Pratt Realty Corporation, to Lee Cohen and Harry Gray, co-partners trading as Hy Grade Fur Company, by a written lease dated April 30, 1943 for one year commencing on the 1st day of May 1943, and ending on the 30th day of April 1944, "or until the stipulated term shall as hereinafter provided sooner cease or be terminated or be renewed or continued, at the annual rental of $3237.60". The lease provided that in the absence of sixty days written notice prior to expiration, it should be renewed for the further term of a year upon the same conditions as to rental and otherwise. Under date of February 29, 1944 the landlord undertook to give the sixty day notice of termination to the tenant but the letter mailed at the office of the landlord in New York City was not received by the tenant until several days later, and therefore was not a timely notice for termination; in consequence of which the lease was automatically renewed to terminate April 30, 1945.

On July 12, 1944 the former tenants of the space, the Hy Grade Fur Company, filed a claim, and an amendment thereto on June 19, 1945, for just compensation. The United States has filed a motion to strike the claim on the ground that the tenant is not entitled to any compensation for the taking in the circumstances of the case. At the trial of this issue the parties waived a jury and the case was heard upon the evidence submitted. The pertinent and controlling facts found from the evidence can be briefly stated.

The Sonneborn (now Paca-Pratt) Building is situated in the business district of Baltimore City. It was originally occupied and used for the manufacture of clothing, but more recently, after a change of ownership, it has been rented to various tenants for manufacturing and other purposes.

The Hy Grade Fur Company, now a partnership, successor to a corporation of the same name, had been a tenant of the condemned office space for about fifteen years under successive leases. It used the premises for the manufacture of comparatively inexpensive fur coats. It had equipped the space with machinery and other trade tools and fixtures appropriate for the business. By reason of the government's taking possession it was obliged to remove its fixtures on very short notice, and to temporarily relocate for a few months in another building nearby, and then to again remove to another more permanent location. It has filed an itemized claim for expenses of removal of its fixtures to these new locations and the cost of adapting machinery to the new location, and similar expenses in the amount of $4459.88, with a separate and additional claim in the amount of $4500 for damages based on interference with and diminution of business by reason of the necessary relocations. It has offered evidence tending to support most of the items of its claim. It is, however, not necessary to determine the exact amount of damages sustained. Under no aspect of the case could the claim for damages to the business be allowed. A number of separate items for moving expenses and kindred items would also have to be disallowed even if the claimants were entitled to some recovery; but the testimony is convincing that the claimants undoubtedly sustained substantial actual consequential damages in the amount of several thousand dollars due to expenses of moving and readaptation of machinery necessitated by change in location and inaccessibility of the kind of electric power current previously used in the Paca-Pratt Building.

The lease was on a long printed form, the 14th Article of which reads as follows: "Fourteenth: It is mutually convenanted and agreed that if the whole or any part of the premises shall be required, taken or condemned by any competent authority for any public or quasi-public use or purpose, then in any such event this lease and the term and any renewal and all rights and liabilities of the parties, each to the other, thereafter accruing, shall cease and expire and become null and void from and after the date when such possession shall be required or title be vested, without apportionment to Tenant of the award or other compensation, if any, by reason of such requisition, taking or condemnation; but nothing herein contained shall deprive Tenant of the right, if any, to receive from

the requisitioning or condemning authority award for compensation or loss of or damage to any of Tenant's tangible property or business, provided the same is not in diminution of the award or compensation payable to Landlord; and Tenant shall make payment of all rent and other charges accrued and pro-rated to the date of such requisition, taking or condemnation."

The basic rental rate for space in the Paca-Pratt Building has been 40 cents per square foot. An agreement has been made between the government and the building owner that the rental to be paid by the government during its temporary occupation of the space condemned, shall be at the rate of 50 cents per square foot per year, but with reduction to 45 cents per square foot to July 1, 1948, if the government occupies the property that long, in consequence of certain improvements to an elevator made at government expense. The rental paid by the claimants was at the rate of about 40 cents per square foot. It is contended by the government that the increased rental agreed to be paid by it is in consideration for additional services to be performed by the landlord particularly in that the office space will be occupied by many more employes than those heretofore serving the claimants. This reason for the increased rental is disputed by the claimants as a matter of fact. It is unnecessary to decide the point in this case.

My conclusion is that the claimants are not entitled to recover, principally by reason of the fourteenth article of the lease quoted above.

## Opinion

Counsel for the claimants relies on the recently decided case of United States v. General Motors Corporation, 323 U.S. 373, 65 S.Ct. 357, 361. This now well known federal condemnation case dealt with the admissibility of evidence for the determination of just compensation in "an extraordinary and unusual" situation. The particular case involved a taking by the government for temporary occupancy of a warehouse, then under a long term lease to the tenants who were claimants in the case. The court was dealing with a situation in which presumably the government's occupation would be much less in duration than that of the tenant's lease, and after the termination of the government occupation the tenants would resume occupancy. The tenants had equipped the building with costly trade fixtures which it was neces-sary to remove and store during the temporary occupation. At the trial of the case the measure of damages allowed the tenant claimant was limited to the determination of the fair market price for the rental of the property on the basis of a long term lease, which resulted in a verdict for a sum for the temporary occupation by the government of even less than the rental which the tenants were paying to the landlord. The tenants had offered evidence of moving and storage expenses and damage to fixtures which had to be removed. This evidence was rejected by the trial judge. In holding that the evidence should have been received, it was said in the opinion of the Supreme Court by Mr. Justice Roberts (323 U.S. at page 383, 65 S.Ct. at page 362): "Such items may be proved, not as independent items of damage but to aid in the determination of what would be the usual—the market—price which would be asked and paid for such temporary occupancy of the building while then in use under a long term lease. The respondent offered detailed proof of the amounts actually and necessarily paid for these purposes. We think that the proof should have been received for the purpose and with the limitation indicated. Proof of such costs as affecting market value is to be distinguished from proof of value peculiar to the respondent, or the value of good-will or of injury to the business of the respondent which, in this case, as in the case of the condemnation of a fee, must be excluded from the reckoning."

In the instant case the original taking by the government extended for a period beyond the term of the claimants' lease. For this reason counsel for the government contends that the case is not ruled by the General Motors case. Counsel for the claimants, however, points out that his clients had occupied the space as tenants for fifteen years in the past and had every reasonable expectation of continuation of the lease from year to year thereafter. And in this connection reference is made to a very recent decision in the 10th Circuit in United States v. Petty Motor Co., 147 F.2d 912. In that case some of the tenants of the building taken by the government for temporary occupation were in possession under only monthly leases but they had been long time tenants occupying the premises under the same arrangement. The court held that the record justified the conclusion that the tenancies would have continued for an indefinite

period had not the government begun condemnation proceedings. It was held on the authority of the General Motors case that each of the tenants was entitled to just compensation. The trial court had instructed the jury that in determining the amount they might consider evidence as to the cost of moving, remodelling, reinstalling equipment and increased rents—"that while these items were not recoverable as such, yet they were proper to consider with all the other evidence in determining the value of their right of occupancy or the just compensation which should be paid to each tenant." On appeal the government contended that the rule of the General Motors case was not applicable because it was limited to the particular situation above described wherein the government's occupancy was temporary only and did not extend to or beyond the term of the lease of the tenant. But the court rejected this contention saying (147 F.2d at page 914): "The basic principles announced in the General Motors case are not confined to the narrow facts involved therein. We are convinced that the principles announced therein are controlling under the facts as presented here. Otherwise, the government would in this case convert the Fifth Amendment from the guarantee of just compensation into an instrument of confiscation." It is said by counsel that certiorari has been granted in the case.

I do not find it necessary in this particular case to rule upon the issue of law, whether or not the General Motors case is applicable to the instant case, because I have reached the conclusion that the tenant claimants are not entitled to recover here by reason of the 14th Article of the lease.

Prior to the present World War the government's condemnation of private property for public use was almost invariably exercised by the taking of the whole fee interest in the property. And in a long line of cases, as pointed out in the General Motors case, 323 U.S. at page 379, 65 S.Ct. at page 360, the rule has been firmly established that in such takings consequential losses to the owner or tenant, such as removal expenses and business losses, were not allowable as just compensation in addition to the market or fair value of the fee interest so taken. It was said by Mr. Justice Roberts: "But the courts have generally held that they are not to be reckoned as part of the com-

pensation for the fee taken by the Government. We are not to be taken as departing from the rule they have laid down, which we think sound. Even where state constitutions command that compensation be made for property 'taken or damaged' for public use, as many do, it has generally been held that that which is taken or damaged is the group of rights which the so-called owner exercises in his dominion of the physical thing, and that damage to those rights of ownership does not include losses to his business or other consequential damage."

 It is clear enough, therefore, that the claimants in this case are entitled to compensation only for any interest in the subject condemned which they may have possessed at the time of the taking by the government. More specifically, if the claimants' lease expired on the day the government took possession, then the claimants had no interest in the property taken by the government. And this seems to be very clearly and expressly the effect of the 14th Article of the lease. It provided that in event of condemnation of the leased premises, "then in any such event this lease and the term and any renewal and all rights and liabilities of the parties, each to the other, thereafter accruing, shall cease and expire and become null and void from and after the date when such possession shall be required or title be vested, without apportionment to Tenant of the award or the compensation, if any, by reason of such requisition, taking or condemnation." The further qualifying provision of the Article, that nevertheless the tenant should have the right to receive from the condemning authority compensation for damage to the tenant's tangible property or business, is not here applicable because there was no such direct damage to the tenants' fixtures by the government. By the 16th Article of the lease the tenant agreed to remove his fixtures and property upon the termination of the lease. It is true that the claimants offered evidence tending to show business losses but these would not have been recoverable against the government even under the General Motors case.

Clauses similar to the 14th Article of the lease in this case are commonly referred to as "full condemnation clauses". Such provisions are frequently inserted in long formal leases although I think they have

heretofore not been generally customary in leases of Baltimore City property. The question of the legal effect of the condemnation clause on the right of a tenant to recover against the condemning authority has been considered and decided in a number of comparatively recent federal condemnation cases and also in older state court decisions. Necessarily each case depends upon the wording of the particular provision in the lease as applied to the facts of the case. Where the wording of the clause is similar to that in the instant case the courts have very uniformly held that the dispossessed tenant is not entitled to recover against the condemning authority. It is doubtless true that the condemnation clause is inserted primarily for the benefit of the landlord and to preclude any diminution of the condemnation award to him by the participation of the tenant in the benefits of the award. But it is equally clear that if by the proper construction of the clause the interest of the tenant is ended and determined by the fact of condemnation, then the tenant has no compensable interest in the property condemned.

In United States v. Improved Premises, D.C.S.D.N.Y., 54 F.Supp. 469; In United States ·v. 3.5 Acres, D.C.Mass., 57 F.Supp. 548; and in United States v. 21,815 Sq. Ft., D.C.E.D.N.Y., 59 F.Supp 219, the condemnation clauses all provided that in the event of condemnation the lease should terminate, and in all the cases it was held that the dispossessed tenant was not entitled to recover compensation against the federal government. To the same effect, see also the following earlier state cases: Munigle v. City of Boston, 3 Allen 230, 85 Mass. 230; Goodyear Shoe Machinery Co. v. Boston Terminal Co., 176 Mass. 115, 57 N.E. 214 (Holmes, J.); In re City of New York, Triborough Bridge, 249 App. Div. 579, 581, 582, 293 N.Y.S. 223, affirmed without opinion 274 N.Y. 581, 10 N. E.2d 561; Matter of City of New York, Allen Street, 256 N.Y. 236, 176 N.E. 377; In re City of New York, ·168 N.Y. 254, 61 N.E. 249. See also other cases collected in 98 A.L.R. 254, and Article in 31 Va.Law Rev. 539, 547. United States v. Certain Parcel, D.C.M.D.Pa., 51 F.Supp 811, is to the same effect in principle although the wording of the clause was somewhat different.

In United States v. Four Parcels of Land, D.C.S.D.N.Y., 20 F.Supp. 306, 309, the tenant was permitted to recover because in addition to the printed wording of termination of the lease, there had been the condemnation clause providing for added in typewriting the following sentence: "Any award for the fee to belong solely to the landlord; any award for the leasehold interest to belong to the tenant." Under the particular facts of the case it was held this added sentence was controlling and permitted the tenant to share in the award. In United States v. 194,717 Sq. Ft., D.C.N.J., 60 F.Supp. 314, 315, the dispossessed tenant was also allowed to recover against the government despite a condemnation clause. But it will be noted from the opinion that the situation with respect to the tenant's lease was quite different from that in the instant case. The City of Newark had leased the hangar on the Newark Airport to the Brewster Aeronautical Corporation for a long term lease not expiring until March 1, 1948. Thereafter the City of Newark leased the airport to the United States for three months with option for renewal from year to year. The option had been exercised thereby extending the term to June 30, 1944. The City's voluntary lease to the government was made subject to the existing leases on the property, and it was provided the government should enforce the provisions of the existing leases and upon the termination of its occupation should reassign them to the lessor; "provided that the rights of the tenants only under said leases as in force or as hereafter amended shall be recognized by the Government." Subsequently the government condemned the temporary use of the hangar which had been leased to the Brewster Company. It was held by the district judge that the only property taken by the government was the interest of the Brewster Company as tenant. This case is, therefore, distinguishable on the facts. At the time of the condemnation it appears that in effect the government was itself the lessor. Possibly it was considered that this amounted to an eviction of the tenant by its lessor, which ordinarily gives rise to an action for damages. But compare Goodyear Shoe Machinery Co. v. Boston Terminal Co., 176 Mass. 115, 57 N.E. 214 (Holmes, J.) where the interest condemned was a leasehold estate only and the condemnor was the owner of the reversion; where the lease contained a condemnation clause; and where it was held the lease nevertheless expired when the condemnor gave notice of termin-

ation of the lease incident to its own act of exercising its authority to condemn. It was pointed out in the opinion that the covenant for quiet enjoyment in the lease was not breached by the exercise of the sovereign right of eminent domain.

It may also be noted that in the above referred to case of United States v. Petty Motor Co., it is stated in the opinion of the court that a five-year lease to one of the tenants making claim for compensation contained a condemnation clause which terminated the lease if the premises were condemned; but the clause is not quoted in full. Apparently the tenant was nevertheless permitted to recover although it does not definitely appear from the opinion whether the clause was relied upon by the government, and there seems to have been no discussion of the point in the opinion.

Counsel for the claimants have submitted an extended and well expressed argument against the applicability and force of the condemnation clause in the lease. The contentions are (1) that properly construed the clause applies only between the landlord and tenant and therefore does not bar the claim against the government; (2) that even if the clause were otherwise applicable, it applies only where the government takes the fee interest of the landlord and does not apply where, as here, the government has taken only a temporary occupancy and (3) that in this case there was really no condemnation at all, because after the original taking by the government the landlord agreed with the government as to the amount of the award to it by entering into an agreement for a new rental. I do not think any of these contentions are tenable in view of the plain wording of the condemnation clause in this case; but I will comment on them briefly.

As to the proper construction of the condemnation clause, emphasis is sought to be placed on the wording "and all rights and liabilities of the parties *each to the other,* thereafter accruing, shall cease and expire and become null and void"; and also upon the concluding proviso which preserves the tenant's rights *"if any"* to compensation for loss or damage to the tenant's tangible property or business. (Italics supplied.) But this contention ignores other wording which is here applicable. Reading the clause as a whole it is entirely clear that four things are definitely provided in the event of condemnation. They are (1) the lease expires; (2) the rights of the parties *inter sese* for the future thereupon terminate; (3) the tenant is not to be entitled to any apportionment of the award to be made by reason of the condemnation except that (4) if the condemning authority damages the tenant's tangible property or business the latter shall not be deprived of the right, if any, to receive compensation for such loss or damage, provided the same is not in diminution of the award or compensation payable to the landlord.

It is argued that the words of the clause "each to the other" in some way limits or modifies the phrase which provides that the lease expires. But the context shows clearly enough that the one clause does not modify the other but is in addition to the other. The meaning is that in the event of condemnation (1) the lease expires *and* (2) the rights and liabilities of the parties "each to the other" thereafter accruing also expire and become null and void. ·

True it is that *if* the tenant has a legal right to recover against the condemning authority for loss or damage to his tangible property or business (in which of course the landlord is not interested) then the tenant is not deprived of that right by the condemning clause. But this proviso is not applicable under the facts of this case. By another clause of the lease, upon its termination the tenant was required to remove its property and in fact did so in this case. The government did not in any way damage or interfere with the tenant's fixtures; nor was there any proof in the case of direct damage to any of the tenant's tangible property other than what possibly may be inferred from the necessity for twice removing to new locations; and as to this there was no evidence of specific damage to the fixtures. As has already been pointed out, under no aspect of the case could the tenant recover for business losses consequential upon the enforced removal.

It is also argued that the government is only an *incidental* beneficiary of the condemnation clause, and should not be allowed to take advantage of it. This contention is not new. It was advanced and rejected· in some of the older cases. The short answer given is that as the lease expires by its own provision when condemnation occurs, the lessee has no property interest taken by the government, and therefore has· no provable damage. In re Third

St. Improvement in City of St. Paul, 178 Minn. 552, 228 N.W. 162; Munigle v. City of Boston, 3 Allen, Mass., 230; Scholl's Appeal, 292 Pa. 262, 141 A. 44.

■ No authority is cited in support of the contention that the condemnation clause applies only when the government takes the leasehold fee interest. It is argued in support of the contention that the parties must have so intended because condemnation clauses of this general purport have been customary in long formal leases for many years in the past, while it has not been the customary practice for the condemning authority prior to the Second War Powers Act of 1942 to condemn temporary occupancy only. I find nothing in the context or wording of the condemnation clause to limit its applicability to condemnation of the landlord's fee interest. In the instant case the premises leased consisted not of an entire building but only of space on one floor of a large building in which there were numerous tenants. The wording includes the event of the taking of the "whole or any part" of the premises. It is true that in most of the reported cases the condemning authority has apparently taken the landlord's entire fee interest. But see Goodyear Shoe Machinery Co. v. Boston Terminal Co., 1900, 176 Mass. 115, 57 N.E. 214; and Duckett & Co. v. United States, 1924, 266 U.S. 149, 45 S.Ct. 38, 69 L.Ed. 216. The reason for the insertion of the clause is equally applicable to a taking of temporary occupancy as well as where the fee is taken. And in the particular instance it seems clear that the parties so intended. The contention was expressly considered and overruled in United States v. 21,815 Sq. Ft., D.C.N.Y., 59 F.Supp. 219, 221, where the government took temporary occupation only. In his opinion District Judge Abruzzo said: "When these clauses were agreed upon between the landlord and tenant, it must be borne in mind that the war powers of the different governmental agencies gave the right to acquisition of occupancy only. The language of the condemnation clause is in itself all embracing and I think it included the condemnation of any property whether the fee was taken or only use and occupancy."

And in United States v. Improved Premises, etc., D.C.N.Y., 54 F.Supp. 469, 471, 472, a similar condemnation clause was held applicable where the government condemned only a temporary occupancy. It is pointed out by counsel for the claimants here that this latter case was decided before the General Motors case, but that fact seems irrelevant as there was apparently no similar clause in the lease considered by the Supreme Court in that case.

Finally, it is argued that there was in fact no real condemnation at all in this case and therefore the clause is inapplicable. The facts are that on June 14, 1944 the government filed its petition in the usual form in this case for the condemnation of the office space "for a term of years ending June 30, 1945, extendible for yearly periods thereafter during the existing national emergency". The petition referred to several Acts of Congress (including the Second War Powers Act of March 27, 1942), which authorized the acquisition of land for military or other war purposes, and also authorized the Secretary of War to acquire on behalf of the United States by condemnation such tracts or parcels of land in the State of Maryland as may be necessary in his discretion, for use of the Baltimore Cargo Port of Embarkation in the City of Baltimore; and alleged that the necessary money was available therefor. The petition further recited that the Secretary of War had determined to acquire 8286 square feet of space on the 8th floor of the Paca-Pratt Building for use in connection with the Baltimore Cargo Port of Embarkation by condemnation under judicial process; and that under the Second War Powers Act the United States was authorized to take immediate possession of the said property and the Secretary of War had requested that an order be obtained for immediate possession. The parties defendant named in the petition were the Paca-Pratt Realty Corporation (the landlord), F. Leonard Maas, its resident manager, and Hy Grade Fur Company, the claimants in this case. On the petition the court passed an order that the premises should be surrendered to the United States on June 17, 1944. After notice the several defendants answered. On July 13, 1944 the Paca-Pratt Realty Corporation answered and prayed "that it be given judgment against the United States for such sum as shall be found just and reasonable compensation for the taking of space in the Paca-Pratt Building sought to be condemned in this proceeding". On July 12, 1944 the present claimants answered making claim for just compensation and filed with their answer a copy of their lease of the premises. Quite

some time thereafter it appears from the evidence in the case that the government and the Paca-Pratt Realty Corporation, the landlord, agreed upon the award of compensation to be made. On May 29, 1945 written notice was filed in the case by counsel for the United States giving notice to the Paca-Pratt Realty Corporation and others that the Secretary of War had exercised the election to extend the term described in the original petition for condemnation from June 30, 1945 to June 30, 1946; and on June 14, 1945 the government deposited in court $3873.74 in payment of the estimated award for the taking of the floor space.

■ The claimants' contention is that under these facts there has been no condemnation in fact and therefore the clause is not applicable. It is true that there seems to have been no formal judgment award in the case in favor of the landlord. But it is also clear that the amount of the award to which the landlord was entitled has been agreed upon and either paid or deposited in court. But however that may be, the operative effect of the condemnation clause is not limited to a situation in which there has been a formal condemnation award. The clause reads that if the premises shall *"be required, taken or condemned"*, then in such event the lease expires "from and after the date when such *possession* shall be required or title be vested, without apportionment to tenant of the award or other compensation, if any, by reason of such *requisition*, taking or condemnation." (Italics supplied.) The recital of the record procedure shows clearly that the premises were required and possession thereof was taken under an order of court passed on the formal petition for condemnation. Thus it is clear that the event expressly contemplated by the clause did occur.

There is perhaps a suggestion implicit in the argument that the whole procedure was collusive between the landlord and the government for the purpose of dispossessing the tenant without liability either to the landlord or the government. But as this contention is not clearly and expressly made, and the evidence is not sufficient to warrant such a conclusion, it seems unnecessary to discuss it.

The argument is also made that it was the condemnation, rather than the clause in the lease, that was the real cause of the damage to the tenants; that is, that the condemnation preceded the coming into play of the provision of the lease; and therefore the damage was done by the condemnation before the lease was caused to expire by the provision in the lease. But this contention is clearly untenable under the wording of the clause. See also In re Third St. Improvement in City of St. Paul, 178 Minn. 552, 228 N.W. 162.

■ Finally it may be observed that it is expressly clear from the condemnation clause that the tenant was not entitled to any apportionment of the condemnation award. And in this connection it is to be borne in mind that in these condemnation cases the government has the right to have the award made as one entire sum to cover just compensation to all interests taken in the proceeding although for convenience in practice, either in the inquisition to be found by the jury or by the subsequent proceedings, the amount of the award may be distributed among those respectively entitled thereto. Meadows v. United States, 4 Cir., 144 F.2d 751, 752, 753. The clear meaning of the condemnation clause in this case is that the whole award for the government's temporary occupation of the leased premises should go to the landlord without participation of the tenant therein. The necessary result is that the tenant has no right to share in the award for the taking of the premises. If, however, the taking resulted in damages to the tenant's property or business, in which the landlord is not interested, in addition to and separate and apart from the taking of the premises itself, then the tenant's right, if any, to recover in this case against the government was not destroyed by the condemnation clause. In this case the taking by the government caused no direct damage to the tenant's tangible property. And consequential losses, such as expense of moving and storage and readaptation of machinery, would be admissible in evidence (under the General Motors case) only as they might in some measure constitute evidence of the fair value of the tenant's remaining term of the lease. It seems to necessarily result that the claimants in this case have no establishable right to compensation because their lease expired when possession of the property was given to the government in the condemnation proceeding.

I conclude, therefore, as a matter of law that the claimants in this case are not entitled to any compensation and their claim must be dismissed. Counsel may present the appropriate order in due course.