## UNITED STATES *v.* PETTY MOTOR CO.

NO. 77.

Argued December 6, 1945.—Decided February 25, 1946.

*Arnold Raum* argued the cause for the United States. With him on the brief were *Acting Solicitor General Judson, J. Edward Williams, Roger P. Marquis* and *Wilma C. Martin.*

*Shirley P. Jones* argued the cause for respondents. With him on the brief was *Charles D. Moore.*

*Philip S. Ehrlich* filed a brief for the Zellerbach Paper Company, as *amicus curiae,* urging affirmance.

MR. JUSTICE REED delivered the opinion of the Court.

This writ of certiorari under Judicial Code § 240 brings here for review certain problems relating to the just compensation for tenants in condemnation proceedings to take their entire leaseholds when the United States had already taken over the lessors' interest in the property which the tenants occupy. Certiorari was granted to consider the holding of the circuit court of appeals, 147 F. 2d 912, affirming the judgments of the district court, that evidence by a tenant of the costs of moving and reinstallation of equipment was admissible to establish the value of his leasehold under the rule announced in *United States* v. *General Motors Corp.,* 323 U. S. 373. As this issue presents an important phase of the law of eminent domain,[1] we granted certiorari. 325 U. S. 848.

---

[1] See *United States* v. *10,620 Square Feet in Canadian Pacific Bldg.,* 62 F. Supp. 115.

374

These cases arise out of a petition for condemnation of the temporary use for public purposes of a building in Salt Lake City, Utah, filed November 9, 1942, which sought to take the use of the building for the Government through June 30, 1945, with the right of election upon the part of the United States to surrender the premises on June 30, 1943, or June 30, 1944, upon sixty days written notice to the owner.[2] The owner and tenants were parties defendant. An order for immediate possession was entered on November 11, 1942, subject to authorization to the tenants to continue their occupation of their premises for short periods which varied from six to twenty days.

While the condemnation proceedings were pending the owner of the property made arrangements with the United States which resulted in the dismissal of the action against the owner. There is no claim by the United States that this arrangement released it from liability to the tenants for its taking of their leaseholds. As the value of the use of the totality of property, which was taken, thus lost all meaning, the Government accepts a separate responsibility to compensate the tenants for any legally recognized interest which they may have in the property. See *Duckett & Co.* v. *United States,* 266 U. S. 149.

Although an earlier surrender might occur by the election of the United States, the estate sought did not necessarily expire until June 30, 1945. Prompt possession was required from the tenants and all of them were required by the order of possession to vacate the premises which they occupied within various short periods of which twenty days was the longest. The judgments stated the issue was the amount due the tenants for the taking of their occupancy of their premises and found in dollars the just compensation for the rights taken. These facts,

[2] No one questions the authority of the United States to condemn this temporary interest. Second War Powers Act, 56 Stat. 177, § 201. *United States* v. *General Motors Corp.,* 323 U. S. 373.

we conclude, resulted in the taking by the United States
of the temporary use of the building until June 30, 1945.
When the shortening of the term is wholly at the election
of the lessee, the term of the leasehold for the purpose of
determining the extent of the taking must be considered
to be its longest limit.[3] All rights of all the tenants, except
the Independent Pneumatic Tool Company, which is one
of the respondents here, terminated before the end of the
Government's lease by the lapse of time or, in the case of
the Tool Company, by a "termination on condemnation"
clause. With the exception of the Petty Motor Company
and the Independent Pneumatic Tool Company, the ten-
ants were tenants under oral contracts on a month to
month basis. This entitled them only to notice of termi-
nation fifteen days prior to the end of a rental period.
Utah Code Ann. (1943), Title 104–60–3 (2). The Petty
Motor Company held a lease which expired October 31,
1943, with an option for an additional year. Consequently
its rights under its lease ended before those which the
Government sought by its petition.

The lease of the Independent Pneumatic Tool Com-
pany included a clause for its termination on the Federal
Government's entry into possession of the leased property
for public use.[4] The events connected with the Govern-
ment's entry just set out appear to meet the requirements

---

[3] In *United States* v. *General Motors Corp.*, 323 U. S. 373, note 3,
a different situation existed. While the estate there sought did not
necessarily expire during the existing national emergency, the order
for possession, the verdict and the judgment were for that part of the
leasehold interest in the property extending from June 19, 1942, to
June 30, 1943. We said: "The case now presented involves only the
original taking for one year. If, on remand, the case be treated as
involving the Government's option of renewal, the additional value
of that interest must be included in the compensation awarded."

[4] The clause reads as follows:

"If the whole or any part of the demised premises shall be taken
by Federal, State, county, city, or other authority for public use, or

for termination. This does not seem to be controverted. The contention of the Tool Company, as we understand it, is that the tenant is barred from claiming any "of the award of the landlord" but that the condemnor is not relieved of liability to the lessee. This position seems inconsistent. If the Tool Company, with its termination on condemnation clause, was the only tenant and condemnation of all interests in the property was decreed, the landlord would take the entire compensation because the lessee would have no rights against the fund. There would appear to be no greater right where the landlord has been otherwise satisfied. Condemnation proceedings are *in rem, Duckett & Co.* v. *United States,* 266 U. S. 149; *United States* v. *Dunnington,* 146 U. S. 338, 350–54, and compensation is made for the value of the rights which are taken. *United States* v. *General Motors Corp.,* 323 U. S. 373, 379. The Tool Company had contracted away any rights that it might otherwise have had. We are dealing here with a clause for automatic termination of the lease on a taking of property for public use by governmental authority. With this type of clause, at least in the absence of a contrary state rule, the tenant has no right which persists beyond the taking and can be entitled to nothing.[5]

---

under any statute, or by right of eminent domain, then when possession shall be taken thereunder of said premises, or any part thereof, the term hereby granted and all rights of the Lessee hereunder shall immediately cease and terminate, and the Lessee shall not be entitled to any part of any award that may be made for such taking, nor to any damages therefor except that the rent shall be adjusted as of the date of such termination of the Lease."

[5] See *United States* v. *10,620 Square Feet in Canadian Pacific Bldg.,* 62 F. Supp. 115; *United States* v. *8286 Sq. Ft. of Space,* 61 F. Supp. 737, 740–43; *United States* v. *21,815 Square Feet of Land,* 59 F. Supp. 219; *United States* v. *3.5 Acres of Land,* 57 F. Supp. 548; *United States* v. *Improved Premises,* 54 F. Supp. 469, 472; *Goodyear Shoe Machinery Co.* v. *Boston Terminal Co.,* 176 Mass. 115, 57 N. E. 214. Cf. *United States* v. *Entire Fifth Floor in Butterick Bldg.,* 54 F. Supp. 258.

In order to inform the jury as to the value of the tenants' interests where there was a right to continue the occupation of their respective premises, the trial court permitted the introduction of evidence, over the Government's objections, not only as to the value on the market of the use and occupancy, over and above the agreed rent, for any remainder of a term which may have existed in the respective tenants after they were dispossessed, but also allowed evidence of the expenses incurred in moving and the reinstallation of equipment. The trial court's instructions made clear that the evidence was submitted to the jury not for a finding on the cost to the tenants of relocating their businesses but as an element in determining the "value" of their tenancies for that portion of their term which was left upon the termination of the lease. The admission of the evidence and its submission to the jury was approved by the circuit court of appeals on the theory that consideration of such elements of cost was compelled by the *General Motors* case. 323 U. S. 373. The court of appeals recognized that here the Government took the entire term of all the lessees except the Tool Company and possibly the Petty Motor Company but was of the opinion that the principles of the *General Motors* case applied when any leasehold was taken. 147 F. 2d 912, 914. In so holding, the court of appeals was in error.

The Constitution and the statutes do not define the meaning of just compensation. But it has come to be recognized that just compensation is the value of the interest taken. This is not the value to the owner for his particular purposes or to the condemnor for some special use but a so-called "market value." It is recognized that an owner often receives less than the value of the property to him but experience has shown that the rule is reasonably satisfactory. Since "market value" does not fluctuate with the needs of condemnor or condemnee but with general demand for the property, evidence of loss of

profits, damage to good will, the expense of relocation and other such consequential losses are refused in federal condemnation proceedings. *Mitchell* v. *United States,* 267 U. S. 341, 344; *United States ex rel. T. V. A.* v. *Powelson,* 319 U. S. 266, 281; *Potomac Electric Power Co.* v. *United States,* 66 App. D. C. 77, 85 F. 2d 243; Orgel, Valuation under Eminent Domain, chap. V. For the purposes of these cases, it is immaterial whether the Government actually took the leaseholds of the tenants in addition to taking the temporary use of the fee or only destroyed the tenants' right of occupancy. If any property is taken, compensation is required. Cf. *United States* v. *Welch,* 217 U. S. 333.

There was a complete taking of the entire interest of the tenants in the property. It has been urged that to measure just compensation for the taking of a leasehold by its value on the market or by the difference between a fair rental as of the time of taking and the agreed rent, is unfair. It is said the unfairness comes from the fact that there is really no market for leaseholds; that their value is something peculiarly personal to the lessee.[6] The same thing is true as to incidental and consequential damages to the owner of a fee. We think the sounder rule under the federal statutes is to treat the condemnation of all interests in a leasehold like the condemnation of all interests in the fee. In neither situation should evidence of the cost of removal or relocation be admitted. Such costs are apart from the value of the thing taken. They are personal to the lessee.[7] The lessee would have to

---

[6] See *Metropolitan West Side Elevated R. Co.* v. *Siegel,* 161 Ill. 638, 44 N. E. 276; *McMillin Printing Co.* v. *Pittsburg, C. & W. R. Co.,* 216 Pa. 504, 65 A. 1091.

[7] Compare *United States* v. *Improved Premises,* 54 F. Supp. 469, 472; *United States* v. *Entire Fifth Floor in Butterick Bldg., idem,* 261; *United States* v. *Certain Parcels of Land, idem,* 562; *Wm. Wrigley, Jr., Co.* v. *United States,* 75 Ct. Cls. 569; *Thermal Syndicate, Ltd.* v. *United States,* 81 Ct. Cls. 446, 454.

move at the end of his term unless the lease was renewed. The compensation for the value of his leasehold covers the loss from the premature termination except in the unusual situation where there is a higher cost for present relocation than for a future.

*United States* v. *General Motors Corp.* was a different case. In it only a portion of the lease was taken. We there said, p. 382:

> "When it takes the property, that is, the fee, the lease, whatever he may own, terminating altogether his interest, under the established law it must pay him for what is taken, not more; and he must stand whatever indirect or remote injuries are properly comprehended within the meaning of 'consequential damage' as that conception has been defined in such cases. Even so the consequences often are harsh. For these whatever remedy may exist lies with Congress."

There is a fundamental difference between the taking of a part of a lease and the taking of the whole lease. That difference is that the lessee must return to the leasehold at the end of the Government's use or at least the responsibility for the period of the lease which is not taken rests upon the lessee. This was brought out in the *General Motors* decision.[8] Because of that continuing obligation

---

[8] 323 U. S. 373, 380, 383:

"The question posed in this case then is, shall a different measure of compensation apply where that which is taken is a right of temporary occupancy of a building equipped for the condemnee's business, filled with his commodities, and presumably to be reoccupied and used, as before, to the end of the lease term on the termination of the Government's use?"

"Some of the elements which would certainly and directly affect the market price agreed upon by a tenant and a sublessee in such an extraordinary and unusual transaction would be the reasonable cost of moving out the property stored and preparing the space for occupancy by the subtenant. That cost would include labor, materials, and transportation. And it might also include the storage

in all takings of temporary occupancy of leaseholds, the value of the rights of the lessees which are taken may be affected by evidence of the cost of temporary removal.

Upon a new trial, each tenant, other than the Independent Pneumatic Tool Company, should be permitted to prove damages for the condemnation of its rights for any remainder of its term which existed after its ouster by the order of possession but not costs of moving or relocation.[9] The remainder which may exist will depend upon the Utah law on the requirement for notice to terminate the tenancies at will.[10] Some tenants of this group will not be entitled to anything because the notice given them by the order of possession is more than the Utah statutory requirement. The value of the remainder of the term of the Petty Motor Company's lease includes the value of

---

of goods against their sale or the cost of their return to the leased premises. Such items may be proved, not as independent items of damage but to aid in the determination of what would be the usual—the market—price which would be asked and paid for such temporary occupancy of the building then in use under a long-term lease."

[9] The fact that some tenants had occupied their leaseholds by mutual consent for long periods of years does not add to their rights. *Emery v. Boston Terminal Co.*, 178 Mass. 172, 185, 59 N. E. 763:

"It appeared that the owners had been in the habit of renewing the petitioners' lease from time to time, and an attempt was made to give this fact the aspect of an English customary tenant right. The evidence merely showed that the landlords and the tenants were mutually satisfied and were likely to keep on together. It added nothing except by way of corroboration to the testimony that they both intended to keep on. Changeable intentions are not an interest in land, and although no doubt such intentions may have added practically to the value of the petitioners' holding, they could not be taken into account in determining what the respondent should pay. They added nothing to the tenants' legal rights, and legal rights are all that must be paid for. Even if such intentions added to the saleable value of the lease, the addition would represent a speculation on a chance, not a legal right. The court was right in excluding expert evidence as to an increase in value from that source."

[10] *United States ex rel. T. V. A.* v. *Powelson*, 319 U. S. 266, 279.

the right to a renewal for a year, if such right continues under Utah law, as well as the value of the period ending October 31, 1943. The measure of damages is the value of the use and occupancy of the leasehold for the remainder of the tenant's term, plus the value of the right to renew in the lease of Petty, less the agreed rent which the tenant would pay for such use and occupancy.

*Reversed.*

Mr. Justice Frankfurter and Mr. Justice Jackson took no part in the consideration or decision of these cases.

Mr. Justice Rutledge, concurring.

I agree with the result and with the Court's opinion, but with an important reservation which I think should be made expressly.

In *United States* v. *General Motors Corp.*, 323 U. S. 373, the problem was stated as one of first impression, namely, to ascertain the just compensation the Fifth Amendment requires where, under power of eminent domain, temporary occupancy of part of a leased building is taken from a tenant holding under a long-term lease. The Court distinguished the case from others where the taking is of the owner's entire interest, whether a fee, a term of years or some other interest. Sensing the danger of applying to such a situation the strict rules limiting the amount of compensation in the latter types of cases, the Court said this would open a way for the Government to devise its condemnation, by chopping the owner's interest into bits, taking some and leaving him with others in suspended animation, so that the Amendment's guaranty might become an instrument of confiscation, not one of just compensation for what was taken. Such a procedure, the Court further stated, would be "neither the 'taking' nor the 'just compensation' the Fifth Amendment contemplates." 323 U. S. at 382.

The novelty of such a form of taking, together with the obviously confiscatory consequences, in a practical sense, for the owner, led the Court to hold that the usual measure of just compensation applicable when all the owner's leasehold is condemned, namely, payment of only the long-term rental of an empty building fixed by the terms of his lease or by market value, or less, would not suffice to compensate for carving out of the lease a right of "temporary use." Other elements were required to be taken into account as evidence of the value of what was taken.

These included (1) "what would be the market rental value of such a building on a lease by the long-term tenant to the temporary occupier," 323 U. S. at 382, which in addition to the bearing of the long-term rental as one element would include as other elements affecting "certainly and directly . . . the market price agreed upon by a tenant and a sublessee in such an extraordinary and unusual transaction," 323 U. S. at 383, (2) the reasonable cost of moving out the property stored on the premises and of preparing the space for occupancy by the subtenant, including the cost of labor, materials and transportation; and possibly also the cost of storage of goods removed against their sale or the cost of their return to the premises. In addition, for fixtures and permanent equipment destroyed or depreciated in value by reason of the taking, the Court held that the tenant whose lease was so cut up was entitled to compensation as for property taken, under the settled rule of cited authorities. 323 U. S. at 383.

Finally, in a footnote the Court pointed out that after judgment the Government had been allowed to amend its petition so as to include in the interest taken a yearly right of renewal, after which the trial court entered a new judgment for the original figure. Stating that these facts were not taken to alter the question presented here, which involved only the original taking for one year, the Court

went on expressly to rule: "If, on remand, the case be treated as involving the Government's option of renewal, the additional value of that interest must be included in the compensation awarded." 323 U. S. at 376, note 3.

Thus the Court applied a rule of compensation to the case of carving out a temporary or short-term use from a longer term very different from that generally applicable when the owner's entire interest is taken. The purpose and the basis for this were to give substance, in practical effect, to the Amendment's explicit mandate for payment of *"just* compensation" in cases of such extraordinary "takings" and to prevent those words from being whittled down by legalistic construction into means for practical confiscation.

In this case the Court has construed all of the takings as being of the tenant-owners' entire interests. This is clearly the case, on the record, with respect to all except Petty Motor Co. As to it I have doubt but I accept the Court's construction that the Government has condemned its entire leasehold interest in the premises and therefore must pay the full value of that term according to the usual rules in such cases.

My reservation, however, has to do with a possibility this record does not present as an accomplished fact in the case of the Petty Co., but does present as a contingency which might be realized and, in that event, would have a direct and inescapable relation to the ruling concerning the quantum of compensation in the *General Motors* case.

In that case the interest taken was for one year out of a twenty-year term which had six years to run from the time of the original condemnation. There was also added by the later amendment the right of renewal from year to year which, if exercised, might have extended the term taken to the end of the leasehold interest.

In this case a converse sort of taking is presented by the Petty Motor situation. That company held a lease expiring October 31, 1943, with an option for an additional

year which if exercised would extend the term to October 31, 1944. The condemnation petition was filed November 9, 1942, when the Petty lease had almost one year to run in any event and two if the option should be exercised. The Government sought to take the use of the building through June 30, 1945, but with the option to surrender the premises on June 30, 1943, or June 30, 1944, on giving sixty days advance notice in writing.

It is this option which I think makes dubious the ruling that all of the Petty Motor Company's interest was "taken." In my opinion it was only "taken" contingently. For, if the option is valid, quite obviously the Government was free to surrender, by giving notice, on June 30, 1943, in which event Petty's lease would have been in force until the following October 31 in any event, or on June 30, 1944, in which case Petty's lease might have continued in force until October 31, 1944. In either event the case would have fallen squarely within the *General Motors* situation and ruling.

In my opinion that ruling and the requirement of paying compensation according to the measure it prescribes apply whether the Government carves out part of the tenant-owner's term by one method of stating what it takes or another. That is, for this purpose, it makes no difference whether the Government "takes" the temporary use for part of the term but adds to this a right of renewal periodically which if exercised will extend the term taken beyond the term of the lease; or, on the other hand, purports to take a term which extends beyond that of the leasehold interest, but reserves the right to cut this down periodically so that in fact it may surrender the premises before the leasehold expires and thus carve out of it a shorter term, just as in the *General Motors* taking.

Whether the chopping up is accomplished one way or the other, the effects for the owner are the same, the "taking" is in substance the same, and the compensation

is required, under the *General Motors* decision, to be the same. That ruling cannot be avoided by inverting the length of the term specified and, correlatively, the character of the option added. Nor can it be avoided by construing the term taken, in view of the contingent option, in cases of the Petty type as including all of the interest of the lessee, if in fact the Government exercises the option and surrenders the premises before the lessee's term expires. Upon such a showing the *General Motors* rule would apply and the owner-lessee would be entitled to recover compensation including all of the elements specified in that rule, subject only to making proof of them.

This question I think sufficiently important to be explicitly reserved for decision when a case arises requiring application of the *General Motors* rule to such a situation. I do not understand the Court to rule to the contrary, since there is no showing on this record that the Government has exercised its option. I therefore concur in the decision as it is rendered upon the record which has been presented.