**UNITED STATES of America, Petitioner-Plaintiff,**

**v.**

**Improved premises designated as the FISK BUILDING and known as 250 WEST 57th STREET, BOROUGH OF MANHATTAN, CITY, COUNTY AND STATE OF NEW YORK, and Arthur Felber, et al., Defendants.**

United States District Court
S. D. New York.
April 8, 1954.

Harry T. Dolan, Sp. Asst. to the U. S. Atty. Gen., for petitioner-plaintiff.

Keesing & Keesing, New York City, for defendants Dominick Corelli and Isaac Karp, d/b/a Tri-Dental Laboratory. Melvin W. Agrest, New York City, of counsel.

Alexander Kosloff, New York City, for defendant Manhattan Mut. Auto. Cas. Co., Inc.

Aaron H. Walowit, Jackson Heights, N. Y., for defendant Vacationland Travel Service, Inc.

Bergerman & Hourwich, New York City, for defendants Arthur Felber and Anne R. Kelly and others.

KNOX, Chief Judge.

The above entitled proceeding was instituted by the filing of a complaint of condemnation on January 28, 1951. Its purpose was to bring about the condemnation for public use of the third and fourth floors of the "Fisk Building", located at 250 West 57th Street, in the Borough of Manhattan, New York City. The space sought to be obtained comprised 34,718 square feet.

The United States sought the exclusive use and occupancy of such space for a period beginning July 15, 1951, and ending July 14, 1952, with the right to extend such use and occupancy for annual periods to July 1958. As of the present time the Government has exercised its right to such use and occupancy to July 1954.

This Court, on June 28, 1951, entered an order whereby the Government was granted the right to the exclusive use and occupancy of the space as of July 15, 1951. However, some of the then tenants of the premises, by arrangements made with the appropriate authority, did not remove from the building until various dates thereafter. At the time this proceeding was begun, the said two floors of the building were occupied by some fifty tenants who had been in possession for various periods preceding the commencement of this suit. With a few exceptions, the leases of the respective tenants had expired, but such tenants continued to occupy the premises as statutory tenants under the provisions of the Commercial Rent Control Law of the State of New York. Laws of 1945, Ch. 3, as amended, Title 23, McKinney's Unconsolidated Laws, § 8521, et seq.

As a result of the order of condemnation, it became necessary for the several tenants to remove from the premises and, if they so wished, to locate their businesses at other locations.

At the outset of this proceeding a considerable number of such tenants entered appearances herein and filed claims for compensation for damages allegedly sustained. Thereafter, numerous such tenants withdrew their appearances and, by stipulation, waived their respective claims for compensation. The larger number of tenants, however, failed to appear in the suit, and made no claim for compensation.

On February 5, 1954, the Government served a notice of hearing to be held before me on February 19, 1954 upon pending compensation claims. Service was by mail, and such notice was directed to all defendants who had previously appeared personally, or by attorney, as

well as to all defendants who had failed to appear.

Upon the return date of the notice, all defendants, with the exception of those about to be listed, defaulted in appearing and submitted no proof of their claims for compensation. The following tenants did appear:

Isaac Karp, d/b/a Tri-Dental Laboratory and Dominick Corelli, who appeared by Keesing & Keesing, Esqs., attorneys, 250 West 57th Street, New York City; Manhattan Mutual Automobile Casualty Co., Inc., who appeared by Alexander Kosloff, Esq., attorney, 1775 Broadway, New York; Vacationland Travel Service, Inc., appearing by Aaron H. Walowit, Esq., attorney, 37–53 82nd Street, Jackson Heights, New York.

The nature and character of the claims thus submitted can generally be classified as costs and expenses alleged to have been incurred by such tenants as incidentals of their being required to remove from the condemned premises, and to equip new quarters or space for the conduct of their future business activities. Such moving expenses fall into the following categories:

(a) Carting and moving expenses; (b) lettering on doors and windows of new space into which the tenants moved; (c) cost of partitions and other changes or improvements in the premises to which they removed.

One of the tenants, Dominick Corelli, contended that following the institution of this action and the order of possession that followed he elected not to remove his barber shop and beauty parlor equipment. He now argues that it had no removal value inasmuch as it was fitted for the use of only direct electric current. The proof indicated that he shortly left the State of New York and went out of business; that he had made no effort to remove or salvage his equipment despite a subsequent notice from the Department of State advising him of the necessity of removal or of otherwise disposing of this material.

The leases under which these various tenants first went into possession of portions of the condemned space and under which they subsequently occupied the space as statutory tenants were on the standard form of office lease commonly used in this City and each of them contained the typical "alteration" and "eminent domain" clauses found in such standard form. These clauses are as follows:

"4. Tenant shall make no alterations, decorations, additions or improvements in or to demised premises without Landlord's prior written consent, and then only by contractors or mechanics approved by Landlord. All such work shall be done at such times and in such manner as Landlord may from time to time designate. All alterations, additions or improvements upon demised premises, made by either party, including all panelling, decorations, partitions, railings, mezzanine floors, galleries and the like, shall, unless Landlord elect otherwise (which election shall be made by giving a notice pursuant to the provisions of Article 29 not less than 3 days prior to the expiration or other termination of this lease or any renewal or extension thereof), become the property of the Landlord, and shall remain upon, and be surrendered with said premises, as a part thereof, at the end of the term thereof. Any mechanic's lien filed against the demised premises, or the building of which the same form a part, for work claimed to have been done for, or materials claimed to have been furnished to, Tenant, shall be discharged by Tenant within 10 days thereafter at Tenant's expense, by filing of the bond required by law.

"12. If the whole or any part of demised premises shall be taken or condemned by any competent authority for any public or quasi public use or purpose, then, and in that event, the term of this lease shall cease and terminate from the date when the possession of the part so

'taken shall be required for such use or purpose, and without apportionment of the award. The current rental, however, shall in any such case be apportioned."

Defendant, Vacationland Travel Service, Inc., did not offer its lease in evidence at the time of trial. Nevertheless, this defendant's attorney stipulated that his client's lease contained the same standard form alteration and eminent domain clauses; and was typical of the leases of the other tenants in the building.

The question here presented for decision is whether the claims of any of the defendants who appeared before me are entitled to recover their moving expenses and such incidental expenditure and alleged losses as are presently asserted.

Claims such as these have been before this Court on a number of previous occasions and it has consistently been held that, under similar circumstances, claims of this character are not compensable. United States v. 10,620 Square Feet, D.C.S.D.N.Y.1945, 62 F.Supp. 115, Bright, D. J., United States v. 45,000 Square Feet, D.C.S.D.N.Y.1945, 62 F. Supp. 121, Bright, D. J., United States v. Improved Premises Known as No. 46–70 McLean Avenue, D.C.S.D.N.Y.1944, 54 F.Supp. 469, 472.

A similar decision was made by the United States District Court for the Eastern District of New York in United States v. 21,815 Square Feet of Land in Brooklyn, D.C.E.D.N.Y.1943, 59 F. Supp. 219, affirmed 2 Cir., 1946, 155 F.2d 898. Similar claims have been denied in other jurisdictions. United States v. 40,- 558 Acres, D.C.Del.1945, 62 F.Supp. 98, 101; United States v. Certain Parcels of Land in City of San Diego, D.C.S.D.Cal. 1944, 54 F.Supp. 561; United States v. 8,286 Square Feet, City of Baltimore, D. C.Md.1945, 61 F.Supp. 737, Chesnut, J.

The attorney for one of the defendants stated that he was relying upon decisions reported in 147 F.2d 912 and 275 F. 218 in support of the allegedly compensable character of these claims. The first case relied upon, which the attorney was not able to identify by title, was United States v. Petty Motor Co., 1946, 147 F. 2d 912. This case, arising in the 10th Circuit, was subsequently reversed by the Supreme Court of the United States in U. S. v. Petty Motor Co., 327 U.S. 372, 66 S.Ct. 596, 90 L.Ed. 729.

The other case relied upon by the defendant's attorney appears to be National Laboratory and Supply Company v. United States, 275 F. 218. This case, decided by the District Court for the Eastern District of Pennsylvania in 1921, does not appear to be in accord with any of the more recent decisions of this court, or of the Supreme Court of the United States, in the Petty Motor case or in U. S. v. General Motors Corp., 1945, 323 U.S. 373, 65 S.Ct. 357, 89 L. Ed. 311.

■ It is only under circumstances entirely at variance with those here presented that moving expenses and cost of that character may ever be considered on the question of just compensation for the taking by the government of a leasehold estate (use and occupancy) of real property. The only exception to the rule denying compensation for claims similar to those here asserted involves a taking by the government of a portion of an unexpired leasehold estate, leaving the tenant holding the remainder estate.

This exception was first recognized by the Supreme Court of the United States in the General Motors case, 323 U.S. 373, 65 S.Ct. 357, 362, and which was discussed by Judge Bright in United States v. 10,620 Square Feet, supra. In that case, the government limited and qualified its taking of the use and occupancy to a term shorter than the remaining unexpired leasehold of the tenant, and which presented the problem of the tenant not only being required to remove from his leased premises but to continue liable under his lease contract to his landlord and, subject to the possibility of being compelled to incur the expense and cost incident to moving back

into the condemned premises upon expiration of the government's temporary use thereof. Under these special circumstances the Supreme Court thought such moving expenses should be considered in fixing and determining the value of the portion of the leasehold interest appropriated by the government from the tenant but the Supreme Court made it clear that "such items may be proved, not as independent items of damage but to aid in the determination of what would be the usual—the market—price which would be asked and paid for such temporary occupancy of the building". Cf. United States v. 10,620 Square Feet, supra. The Supreme Court has never extended the principles of the General Motors case beyond the narrow confines of that decision. United States v. Petty Motor Co., supra; United States v. Westinghouse Electric & Mfg. Co., 1950, 339 U.S. 261, 70 S.Ct. 644, 94 L.Ed. 816.

■ In none of the claims now before this Court is there any evidence that any of these tenants had an unexpired leasehold estate out of which the government was taking a part with the tenant holding the remainder. In all instances, the tenants' leasehold estates, as originally created, or as extended between the tenant and landlord, had expired, and the tenants were holding over solely under the benefit of rent control legislation and none of them having a definite unexpired term. Such estates as enjoyed under the rent control laws of New York State, were similar or comparable to the estates which they held under their lease contracts with the landlord and subject to all of the terms, conditions, limitations and provisions of their original leases, with the exception of the rent reserved therein and the term of the lease. While the State legislation preserved their occupancy, it did not abrogate, nullify or change the nature and character of their leasehold estates as created under the leases which had been entered into between these tenants and their landlord and which, but for the

commercial rent laws, would have come to an end on the dates provided for in said lease contracts, unless further extended by mutual agreement.

■ None of the tenants asserted any claim at the hearing that they held any unexpired leasehold estate for which they were entitled to be compensated as the result of the taking, nor was any proof offered by any of these tenants that the value of said unexpired leasehold estate should be computed upon any consideration of their moving expenses, or the expenses for which they asserted claims. If any of the present claimants had an unexpired leasehold estate which was prematurely terminated by the taking, such tenant would be without any right to compensation for the value of his unexpired leases by reason of the eminent domain clauses in his or its lease contract and any award for the use and occupancy of said premises by the Government, under these assumed circumstances, would be payable to the landlord, and the tenants would not be entitled to any portion thereof. United States v. Petty Motor Co., supra; United States v. 21,815 Square Feet of Land in Brooklyn, supra; United States v. 45,000 Square Feet, supra; United States v. 8,286 Square Feet, City of Baltimore, supra.

These tenants in their respective lease contracts relinquished and surrendered *any right to share in the award made for the use and occupancy of their premises*, even if it were assumed, as the proof does not show, that they had unexpired leasehold estates which were terminated by the taking.

■ So far as the claim made by Dominick Corelli, with respect to his barber shop and beauty parlor equipment, is concerned, it is obvious that he deliberately abandoned the same. He was given ample notice to remove the same. Instead of doing so he "told them (the Government, or its agents) to dispose all in best way they could as total loss * * *". He was not privileged to put this burden of care and custody upon the United States and his loss

of the equipment was due to his own inaction.

The claims here made by the above mentioned former tenants of the premises are dismissed.