**UNITED STATES v. 194,717 SQUARE FEET, MORE OR LESS, OF BUILDINGS, etc., OCCUPIED BY BREWSTER AERONAUTICAL CORPORATION AT NEWARK AIRPORT et al.**

No. 857a.

District Court, D. New Jersey.

March 29, 1945.

Joseph Kraemer, Sp. Asst. to the Atty. Gen., for the United States.

Herbert J. Hannoch, of Newark, N. J., for Brewster Aeronautical Corporation.

Philip J. Schotland, of Newark, N. J., for City of Newark.

SMITH, District Judge.

The City of Newark, hereinafter referred to as the City, the owner of a large tract of land, known as the "Newark Airport," leased the hangar thereon to the Brewster Aeronautical Corporation, hereinafter referred to as Brewster. The agreement, dated May 16, 1940, reserved to Brewster "the option to renew the lease for two (2) successive periods of one (1) year each, followed by two (2) further successive periods of five (5) years each, on the * * * terms and conditions" therein prescribed. This option was exercised by Brewster on the expiration of the original term, and again on the expiration of the two successive periods of one year each, thereby extending the term of the lease to March 1, 1948.

Thereafter the City leased the Newark Airport to the United States of America, hereinafter referred to as the Government,

for a term of three months, "beginning April 1, 1942 and ending June 30, 1942." The agreement, dated April 1, 1942, reserved to the Government an option to renew the lease "from year to year * * * upon the terms and conditions (therein) specified." This option was exercised by the Government from year to year, thereby extending the term of the lease to June 30, 1944.

The City, by this lease, granted to the Government the "exclusive use of the said airport, subject to the existing leases," and, in addition thereto, assigned to the Government "all interest * * * in and to the (said) leases." This assignment, however, was subject to the provisions of clause 9 of the lease wherein it was stated: "It is expressly understood, however, that the Government shall enforce all of the terms, conditions and agreements of the said leases, with the exception of the terms, conditions, etc., pertaining to the payment of rent to the lessor, during the life of this present lease, and any renewal or extension thereof, and that *upon its termination the Government will forthwith reassign the leases aforesaid to the lessor; provided that the rights of the tenants only under said leases as in force or as hereafter amended shall be recognized by the Government."* (Emphasis by the Court.) It is clear that under this provision the rights and liabilities of Brewster and the City, except for the temporary interposition by the Government, were to remain unchanged.

Brewster, as tenant and lessee, remained in possession of the hangar until May 23, 1944, when, pursuant to Section 201 of Title II of the Second War Powers Act of March 27, 1942, 50 U.S.C.A.Appendix § 632, the Attorney General, at the request of the Secretary of War, instituted these proceedings "to acquire by condemnation" the "temporary use" of the hangar for "a term for years beginning February 1, 1944 and ending June 30, 1945, extendible for yearly periods thereafter during the existing national emergency." The Government thereupon entered into immediate possession of the hangar thus condemned and acquired.

These proceedings are before the court at this time on the petition of Brewster. The said petitioner, asserting a right to compensation under the Fifth Amendment of the Constitution, seeks an adjudication of the rights and liabilities of the respective parties. The Government, disputing the asserted right to compensation, urges the dismissal of the said petition.

It is well settled that upon the condemnation and acquisition of a leasehold, independent of the fee, there vests in the owner thereof a right to compensation. A. W. Duckett & Co. v. United States, 266 U.S. 149, 45 S.Ct. 38, 69 L.Ed. 216; see also United States v. General Motors Corporation, 323 U.S. 373, 65 S.Ct. 357. This is conceded by the Government, but it is contended that the Brewster leasehold terminated under the express terms of its lease on the institution of these proceedings, thereby terminating the right to compensation otherwise enforceable. We cannot agree with this contention.

The Government rests its contention wholly on clause 24 of the lease, which provides: "In the event that the premises, or any part thereof, are taken or condemned for a public or quasi-public use, this lease shall, as to the part so taken, terminate as of the date title shall vest in the condemnor, and rent reserved shall abate proportionately as to the part so taken or shall cease if the entire premises demised be so taken."

This clause, strictly construed, is determinative of only the rights and liabilities of the respective parties to the lease, the City and Brewster. It seems reasonably clear that its provisions contemplated nothing more than the complete termination of the mutual rights and liabilities of the parties upon the condemnation and acquisition of the fee, the estate held by the City. This clause cannot be extended by implication or otherwise so as to embrace the present condemnation and acquisition of the leasehold, an event which was clearly not contemplated by the parties.

The Government, by these proceedings, condemned and acquired nothing more than the "temporary use" of the hangar for "a term of years beginning February 1, 1944 and ending June 30, 1945," an estate less than that held by Brewster. The right, title, and interest of the City were not affected. The only "property" taken was that of Brewster, and for this taking Brewster must be compensated.

The many cases cited by the Government are easily distinguishable from the case now before us. In the cited cases clauses similar to the one here in question were invoked by the lessor against the lessee as determinative of their mutual rights and

liabilities. The question decided in those cases is not analogous to the question here presented.

This court, pursuant to the provisions of the statute, will appoint three qualified, competent, and disinterested persons to appraise the value of the temporary use and assess the damages for its taking. These persons will be guided by the decision of the Supreme Court in United States of America v. General Motors Corporation, supra.