UNITED STATES v. 10,620 SQUARE FEET, ETC., IN CANADIAN PACIFIC BLDG., CITY OF NEW YORK, et al.

District Court, S. D. New York.

Aug. 28, 1945.

116

Harry T. Dolan, Sp. Asst. to Atty. Gen., for petitioner-plaintiff.

Delafield, Marsh, Porter & Hope, of New York City (Wilmurt B. Linker, of New York City, and James Harper, Jr., of Mount Vernon, N. Y., of counsel), for defendant Fifth Madison Corporation.

Ten Eyck R. Beardsley, of New York City, for defendant Newsprint Service Bureau.

Dammann, Roche & Goldberg, of New York City (Alex Edelman, of New York City, of counsel), for claimants Stravon Publishers and Ward Green Co.

Debevoise, Stevenson, Plimpton & Page, of New York City (Edward C. McLean and Theodore F. Fenstermacher, both of New York City, of counsel), for defendant Previews, Inc.

BRIGHT, District Judge.

In this proceeding, the petitioner-plaintiff has condemned the immediate possession and exclusive use and occupancy of 10,620 square feet space, being rooms 602 to 615, inclusive, and rooms 624 to 626 inclusive, on the sixth floor of the Canadian Pacific Building, at 342 Madison Avenue, New York City, for a term of years ending June 30, 1945. Possession was taken on January 1, 1945.

The owner of the building, Fifth Madison Corporation, and the petitioner-plaintiff have agreed that the fair rental value of the premises taken is at the rate of $20,-660 per annum, or at the rate of $2 per square foot, and the owner claims the entire amount as against any claims of its tenants.

Seven tenant defendants, who have been ousted by the taking, present claims in the proceeding, basing them under the recent decision in United States v. General Motors Corporation, 323 U.S. 373, 65 S.Ct. 357.

They are as follows:

1. *News Print Service Bureau*

This claimant was a tenant of room 605 and part of room 606, under a lease dated February 15, 1944, which was to expire April 30, 1945, and under which it paid

an annual rental of $3400, or $283.33 per month. It moved out on December 13 or 14, 1944, and paid for the expense of moving

For lettering door in the new quarters $41.
Changing telephone from room 605 to
  room 918 in the same building...... 20.
Tips to porters ..................... 12.
                                      ____
    Total ....................... $73.

It paid rent for the month of December 1944, but has not paid any rent for any of the subsequent months. No other proof of damages was offered by it.

### 2. *M. D. Lundin Co., Inc.*

This tenant had a lease for room 605, for which it paid $30. a month. It moved out on January 2 or 3, 1945, and paid the following amounts for moving expenses:

Moving bill ..................... $30.90
Installation of new telephone...... 5.00
Lettering on the door of the new
  office ........................ 6.75
                                  ____
    Total .................... $42.65

It is now paying $45 a month for its present quarters. It has paid no rent for its former quarters since December, 1944. No other proof of damage was offered. This claimant promised to submit its lease, but has not done so. It is presumed that it leased under the same terms as the other claimants in the same building.

### 3. *Stravon Publishers*

This claimant was a tenant of room 613 under a written lease dated January 1, 1944, which was to expire on April 30, 1945, and provided for the payment of $900 per year or $75 per month. It occupied 650 square feet of space. It moved from the premises on January 3, 1945, and paid for moving expenses $188.41. No rent has been paid to the defendant owner since December 1944; claimant has not been billed for any rent, nor has it tendered any since it moved out. No other proof of damage was offered.

### 4. *Ward Green Co., Inc.*

This claimant occupied rooms 614 and 615 under a written lease dated January 1, 1944, which was to expire on April 30, 1945, and provided for the payment of rent at $1200. per annum. It occupied approximately 850 square feet of space, which made its rental approximately $1.40 per square foot. Claimant removed January 3, 1945, and paid for moving $230.29. It has not paid any rent since December 1944, has never been billed for any, and has not tendered any. No other proof of damage was offered. It is stated that it was not offering any proof of value, no opinion evidence, but that it more or less rested upon the stipulation made between counsel for the owner and the Government setting the value at $2.

### 5. *Previews, Inc.*

This claimant occupied rooms 602, 603, 604, part of 606, 607 and 608, under a written lease, dated April 30, 1945. Its rental was $6,000 per annum, and it occupied approximately 3600 square feet, for which it paid on the basis of $1.66 per square foot. Claimant had been a tenant in the building since May 1, 1934. It moved out of the premises on January 3, 1945, and went to 49 East 43rd Street, at which place it was required to pay $2.08 per square foot, and in which it was required to make alterations consisting of partitions, etc., which consumed about ten weeks time. When it moved out it had 37 or 38 employees. Some of them went to the new space at the end of December, and its accounting and production departments were housed in temporary space in the Canadian Pacific Building until the end of January 1945, when they were moved to the new space. It claimed to have paid the following expenses:

Central Moving & Storage Co.
  for moving ................. $1,007.64
Rental of temporary space and
  electricity .................. 365.17
Time of its vice president search-
  ing for new quarters and in the
  moving ..................... 300.00
Time of salesmen searching for
  new quarters and supervising
  alterations for three months... 900.00
Loss of time of clerical staff of 11
  persons for one month........ 1,570.00
Paid for alterations as amortized
  at 10% ..................... 811.98
                               _____
    Total .................... $4,954.79

It paid no rent after December 1944, was not asked for any, and tendered none. No other proof of damage was offered. Its counsel stated: "I understand Mr. Dolan's concession made at the opening to be that the fair rental value of these premises as bare space is $2. a foot. The va-

rious items of damage which I have offered proof of are offered as additional elements of damage tending to prove the total compensation which we conceive we are entitled to in this proceeding."

### 6. Harold B. Karp

This tenant was originally in another suite until December 1943. The Navy Department requested his office, this claimant acquiesced, and moved into the suite on the sixth floor involved in this proceeding. He signed a lease which was to expire April 30, 1945. The lease which he submitted was for the original suite, but he testified that the lease for the new quarters, which he had signed but did not produce, embodied the same terms as the old, to the best of his recollection. The expenses which he claims to have paid are

| | |
|---|---|
| Aiello, Jr., moving | $115.00 |
| Removing and relaying linoleum | 71.00 |
| New linoleum | 81.00 |
| Installing telephones | 45.45 |
| Lettering on glass | 26.50 |
| Loss of stationery | 60.00 |
| Total | $398.95 |

Claimant moved out about December 30, 1944, and paid no rent thereafter, received no bill for rent and tendered none. His counsel stated, "We are not claiming any damage at all for the difference in the space or for the unexpired leasehold."

### 7. Joseph Epstein

This tenant occupied room 609 under a written lease dated March 24, 1944, which was to expire April 30, 1945, and provided for a rental of $720 per annum. He does not make any claim for difference in rentals, or loss of rentals, or for alleged unexpired leasehold estate, just for exact damages caused by the removal, which, he contends, were as follows:

| | |
|---|---|
| Aiello, Jr., for moving | $ 41.46 |
| New electric motor (He said that in the new space they had A.C. current and in the old space it was D.C., so he had to buy a new motor, for which he paid) | 50.00 |
| Removal and installation of telephone | 5.00 |
| New stationery | 15.00 |
| Loss of Carpet | 40.00 |
| Total | $151.46 |

No other proof of damages was offered.

All of these claims have certain things in common. In every instance, all of their leasehold rights have been taken, and by the terms of their leases, their terms expired prior to the term condemned. All of them held under leases which contained the following clause:

"12. If the whole or any part of the demised premises shall be taken or condemned by any competent authority for any public or quasi public use or purpose, then, and in that event, the term of this lease shall cease and terminate from the date when the possession of the part so taken shall be required for such use or purpose, and without apportionment of the award. The current rental, however, shall in such case be apportioned."

All of the claimants surrendered possession of their respective space at or about January 1, 1945, have recognized that all of their interest in the premises was at an end as of that date, and have since neither paid nor tendered rent, nor been billed for it by their former landlord. None of them has offered any proof of rental value. They have not alleged or claimed or proved any value for the unexpired leasehold interest. The proof offered by each of them was of alleged additional elements of damage, consisting mainly of expenses incident and related solely to their moving from the condemned space to new quarters.

In the General Motors case, the Supreme Court had its first opportunity to rule upon an award made in a condemnation proceeding where only temporary use and occupancy was taken. It recognized as valid the rule, in cases where a fee was taken, prohibiting an award for "consequential damages." This decision, therefore, it seems to me, must be confined to cases where a partial taking occurs; that is, where only a part of a tenancy is condemned. I am reenforced in this thought by the statement in the prevailing opinion 323 U.S. at page 380, 65 S.Ct. at page 360, where it was said:

"The question posed in this case then is, shall a different measure of compensation apply where that which is taken is a right of temporary occupancy of a building equipped for the condemnee's business, filled with his commodities, and presumably to be reoccupied and used, as before, to

the end of the lease term on the termination of the Government's use?"

And by the further statement at page 382 of 323 U.S., at page 361 of 65 S.Ct.:

"When it takes the property, that is, the fee, the lease, whatever he may own, terminating altogether his interest, under the established law it must pay him for what is taken, not more; and he must stand whatever indirect or remote injuries are properly comprehended within the meaning of 'consequential damage' as that conception has been defined in such cases. Even so the consequences often are harsh. For these whatever remedy may exist lies with Congress.

"It is altogether another matter when the Government does not take his entire interest, but by the form of its proceeding chops it into bits, of which it takes only what it wants, however few or minute, and leaves him holding the remainder, which may then be altogether useless to him, refusing to pay more than the 'market rental value' for the use of the chips so cut off."

There obviously were but three questions decided in that case. They are: 1. Is the long-term rental value the sole measure of the value of such short-term occupancy carved out of the long term? 2. If the taking necessitates the removal of personal property stored in the building in conformity to the normal use of such a building, is the necessary expense of the removal to be considered in computing compensation? 3. If a tenant's equipment and fixtures are taken or destroyed, or reduced in value, by the Government's action, must it compensate for the value thus taken or destroyed in addition to paying the rental value of the occupancy?

In that case, the General Motors Corporation procured a lease in 1928 for a warehouse, the term of which was to run for twenty years, or, in other words, until 1948. In 1942, the Government became a subtenant of a portion of the space. On June 8, 1942, condemnation proceedings for the occupancy of the remaining portion for a term ending June 3, 1943, and for additional yearly periods, was begun and immediate possession granted. The General Motors Corporation offered proof of the expenses of removal, which was rejected. The expenses which it claimed, among others, were salaries of employees engaged in the work, compensation of employees put out of work by the removal, wages of janitor and watchman during re-moval, cost of shipping contents to other points, compensation to executives and employees in moving freight, and haulage charges, rental of storage for moved articles, bin equipment destroyed, and estimated original cost of installation of fixed equipment completely lost by dismantling. The expenses shown by this proffered proof aggregated $117,000. The award was $38,597.86, which was less than the amount of rent which the General Motors Corporation was required to continue to pay for the space taken. The proof of rental value offered was for bare floor space, and the award was limited to the market value of occupancy of a vacant building. The court held that under the circumstances appearing in that case, proof of the cost of moving out and preparing space for occupancy, which would include labor, materials and transportation, storage of goods, and possible return to the premises, was proper "not as independent items of damage but to aid in the determination of what would be the usual—the market—price which would be asked and paid for such temporary occupancy of the building then in use under a long term lease." It also held that the respondent was entitled to compensation for fixtures and permanent equipment destroyed or depreciated in value by the taking in addition to the value of occupancy. Mr. Justices Douglas and Black concurred in that part of the opinion granting compensation for fixtures and permanent equipment destroyed or depreciated in value, and also that the respondent was entitled to a further increase in the award upon the theory that just compensation to which the respondent would be entitled would at least be the full rental it was required to pay. They dissented, however, from any allowance for the cost of removing personal property from the premises, contending that such consequential losses had been denied where a fee interest was being condemned, and should not then be allowed unless expressly authorized by Congress.

The obvious differences between the General Motors case and the present one are: (a) Here the entire leasehold of the defendants is taken and terminated; (b) there is here no proof of rental value based on or claimed to reflect the expense of removal, merely proof of the bare items of expense; (c) no fixtures or permanent equipment were destroyed or depreciated in value; (d) the defendants' tenancy here was subject to the condemnation clause

quoted, which expressly provides that their tenancy shall cease and terminate "without the apportionment of the award"; and (e) all of the defendants have obviously acquiesced in such termination of their leasehold.

The claims presented by each of the seven defendants must be disallowed for three reasons: (1) They are clearly consequential; (2) there is a failure of proof to sustain them; and (3) the condemnation clause precludes any such recovery.

1. The taking here was of all of the interest of the claimants. The Supreme Court in the General Motors case clearly adhered to the rule that where the taking would terminate altogether the interest of the defendant, "consequential damages" could not be awarded; that he must stand whatever indirect or remote injuries are properly comprehended within that term, which is defined in the same opinion, 323 U.S. at page 379, 65 S.Ct. at page 360:

"The sovereign ordinarily takes the fee. The rule in such a case is that compensation for that interest does not include future loss of profits, the expense of moving removable fixtures and personal property from the premises, the loss of goodwill which inheres in the location of the land, or other like consequential losses which would ensue upon the sale of the property to someone other than the sovereign."

2. It was further stated in the General Motors case, referring to the reasonable cost of moving, that "such items may be proved, not as independent items of damage but to aid in the determination of what would be the usual—the market—price which would be asked and paid for such temporary occupancy of the building." Here no proof of market or rental value of the leasehold was offered taking into consideration the items proved, nor any proof of what effect the removal expenses would have upon such value if taken into consideration. The burden of making such proof was upon the claimants. Westchester County Park Commission v. United States, 2 Cir., 143 F.2d 688, 692.

3. The condemnation clause quoted expressly stipulates that upon the taking the term of the lease shall cease and there shall be no apportionment of any award. I have examined the record in the General Motors' case, and it does not appear that there was any such clause in the lease involved there. I have already written upon this subject. United States v. Improved Premises on McLean Avenue, D.C., 54 F. Supp. 469–472, and that ruling has been followed by Judge Abruzzo in United States v. 21815 Square Feet of Land in Brooklyn, D.C., 59 F.Supp. 219.

Claimants urge (1) that the condemnation clause in the leases established only the rights of the owners and the tenants as between themselves, and is not available to the Government as any answer to their claim; (2) that the words "taken or condemned" refer only to a taking of the fee and nothing more, and never contemplated the condemnation of a leasehold interest; (3) that the only taking is of property of the tenant, nothing is condemned belonging to the landlord except the landlord's possession, after the expiration of the tenants' lease, to the expiration of the Government's occupancy. And they cite in support of their view the cases of United States v. Petty Motor Co., 10 Cir., 147 F. 2d 912, certiorari granted June 18, 1945, and United States v. 194,717 Square Feet Occupied by Brewster, D.C., 60 F.Supp. 314.

1. The agreement is undoubtedly between and referable to the status of the landlord with the tenant. Here the landlord claims the whole award and insists that the clause quoted conclusively determines that question. I cannot see, therefore, where this argument leads to or what it avails claimants. If they have no claim as between themselves and the landlord, who is to get the award, I fail to see where they have any claim. The Government is only required to pay just compensation for the use and occupancy taken. The fair rental value of that use, which is what the General Motors case decides should be paid, has been stipulated at $2 per square foot, and none of the defendants question it. Most of them actually accept, and none offers any evidence upon the subject. Plaintiff-petitioner cannot, therefore, he required to pay more. Whatever claims the tenants might have are encompassed within that amount. The question really is, how shall the amount be distributed as between landlord and tenants. As between them the condemnation clause terminates the tenancies as of January 1, 1945, and there shall be no apportionment. The tenancies were thus terminated as of that date and there was nothing belonging to claim-

ants for the Government to take. The expenses of moving were proven as separate items of damage. The General Motors case decided they could not be recovered as such; proof thereof was "to aid in the determination of what would be the usual —the market—price which would be asked and paid." It seems to me, whichever the viewpoint, the result is the same.

■ 2. The condemnation clause cannot be limited to a taking of the fee. It specifically refers to a taking of the whole or part of "demised premises.'

■ 3. The property taken was that of the landlord's. By the agreement the claimants' interest ceased on the taking—January 1, 1945. Whether the clause can be availed of by the Government or not, the market value to be paid goes to the landlord by virtue of its agreement with its tenants. The amount to be paid for rental value is established without dispute. The owner and the claimants rest on the stipulated amount.

The Petty Motor case and the Brewster decision, in my judgment, are not controlling. In the Petty Motor case all of leasehold rights of month to month tenants and of the Petty Company and a portion of the Independent Company leasehold, were taken. The owner of the fee was eliminated from the case by motion because he had leased the entire building to the Government. The court there construed the General Motors case as holding that where less than a fee was taken, the rule against consequential damages did not apply; and applied the same doctrine to monthly tenants as well as to those whose term extended beyond the taking. The General Motors case, as I read it, justifies no such construction; in words it is directly opposed to such a holding, except where a portion of a leasehold term only is condemned. As quoted above, where the taking terminates altogether defendant's interest, whether fee, lease or otherwise, the latter must stand "whatever indirect or remote injuries are properly comprehended within the meaning of 'consequential damage.'" 323 U.S. at page 382, 65 S.Ct. at page 361. The lease to the Independent Company, containing a condemnation clause had not become effective when the proceeding there was commenced and possession taken; and the court did not discuss, or apparently consider, the effect of such a clause.

In the Brewster case, Brewster's lease did not expire until March 1, 1948, and the use condemned was for a term ending June 30, 1945, extendible for yearly periods during the national emergency. The condemnation clause there involved became effective and terminated the tenancy "as of the date title shall vest in the condemnor." [60 F.Supp. 315] It was held the clause did not contemplate the condemnation and acquisition of a leasehold. Here the reverse is true; the clause here expressly mentions a taking of the whole or part of the "demised premises." Here, too, the tenants expressly stipulated that the award should not be apportioned, and such an agreement is absent in the Brewster lease. I have previously discussed the contention that the clause determined only the rights and liabilities of the parties to the lease. It is also to be noted that the owner, the City of Newark, had leased the airport to the Government subject to existing leases. The owner obviously had no interest in any award.

For the reasons given, the claims of the tenants are denied, and the award on the basis stipulated will be made to the owner.