On writ of certiorari (335 U. S. 810) to review a judgment of the Court of Claims holding that plaintiff was entitled to *693 recover just compensation for vessel requisitioned in time of war on the basis of fair market value without deduction for enhancement in such market value due to demand for ships and the Government’s need for vessels in prosecution of the war.
The judgment of the Court of Claims was reversed by the Supreme Court in an opinion delivered by Mr. Justice Douglas.
A summary of the opinion is as follows:
This was a suit in the Court of Claims under Section. 902 of the Merchant Marine Act of 1936, as amended, 49 Stat. 2015, 53 Stat. 1255, 46 U. S. C. 1242, to recover the balance of “just compensation” alleged to be due from the United States for requisitioning the respondent’s steam tug, the Mac Arthur, in October 1942. The amount of $9,000 was awarded as just compensation by the War Shipping Administration. Respondent rejected the award as inadequate and was paid 75 per cent of the award, and under the statute sued for the balance alleged as just compensation.
Section 902 (a) of the Act, after providing that the owner of any vessel requisitioned by the Commission shall be paid “just compensation for the property taken or for the use of such property” goes on to state “but in no case shall the value of the property taken or used be deemed enhanced by the causes necessitating the taking or use.” “It is around this latter clause”, said the opinion, “that the present controversy turns.”
The Court of Claims found that the fair market value at the time of taking was $15,500 and that respondent was entitled to receive that amount, less the sum already paid, plus interest. The United States admitted liability for only $10,-500, claiming that $5,000 of the market value was due to an enhancement brought about by its need for vessels which necessitated their taking.
The Comptroller General had ruled that Section 902 (a) prohibits the payment of compensation to the extent that it may be based on values in excess of those existing on the date of the President’s proclamation of a limited national emergency (September 8, 1939), provided that such excess be determined as due to economic conditions directly caused by the national emergency.
*694 The Advisory Board on Just Compensation formulated various rules for the guidance of the War Shipping Administration in its requisitioning program (3 C. F. R. 1943, Supp. 48-49), in accord with the Comptroller General’s ruling.
In the instant case, the Government, agreeing with both the Comptroller General and the Advisory Board, contended that the enhancement which is excluded under the statute is not limited to that accruing in the period after the declaration of a national emergency on May 27, 1941 (3 C. F. R. Cum. Supp. 234) and contended for a construction which.would eliminate any enhancement of value due to the war. The Government argued that the Act so construed, though different from hitherto announced judicial rules of construction of “just compensation” within the meaning of the Fifth Amendment, is nevertheless constitutional.
Respondent, relying largely on Monongahela Navigation Company v. United States, 148 U. S. 312, argued that if that construction is adopted it makes the enhancement clause unconstitutional because it conflicts with the judicial construction of “just compensation” and is therefore beyond the competence of Congress to prescribe.
The opinion of the Supreme Court then said:
First. We need not reach the question whether the measure of compensation which Congress wrote into the Act is in all of its applications identical with the judicial standard. We are satisfied that on the present facts the two are coterminous.
The Court in its construction of the constitutional provision has been careful not to reduce the concept of “just compensation” to a formula. The political ethics reflected in the Fifth Amendment reject confiscation as a measure of justice. But the Amendment does not contain any definite standards of fairness by which the measure of “just compensation” is to be determined. United States ex rel. T. V. A. v. Powelson, 319 U. S. 266, 279-280; United States v. Petty Motor Co., 327 U. S. 372, 377. The Court in an endeavor to find working rules that will do substantial justice has adopted practical standards, including that of market value. United States v. Miller, 317 U. S. 369, 374. But it has refused to make a fetish even of market value, since it may not be the best measure of value in some cases. At times some elements included in the criterion of market value *695 have in fairness been excluded, as for example where the property has a special value to the owner because of its adaptability to his needs or where it has a special value to the taker because of its peculiar fitness for the taker’s project. See United States v. Miller, supra, 375 and cases cited. Moreover, where the government lays out a project involving the taking of lands, no increment of value arising by virtue of the fact that a particular tract is clearly or probably within the project may be added. Id., 376-379 and cases cited. Any increase in value due to that fact would reflect speculation as to what the government could be compelled to pay and hence in fairness should be excluded from the determination of what compensation would be just.. Id., 377.
The Court of Claims recognized these rules. But it concluded that they represented the only exceptions to the requirement that market value be paid, that they were inapplicable here, and that therefore there was no enhancement in the value of the vessel that should be excluded from the fair market value in making the award to respondent. We believe, however, that these exceptions are merely illustrations of a principle which excludes enhancement of value resulting from the government’s special or extraordinary demand for the property.
The special value to the condemner as distinguished from others who may or may not possess the power to condemn has long been excluded as an element from market value. See United States v. Chandler-Dunbar Co., 229 U. S. 53, 76. In time of war or other national emergency the demand of the government for an article or commodity often causes the market to be an unfair indication of value. The special needs of the government create a demand that outruns the supply. The market, sensitive to the bullish pressure, responds with a spiraling of prices. The normal market price for the commodity becomes inflated. And so the market value of the commodity is enhanced by the special need which the government has for it.
That seems to have been the situation in the present case. For as we have seen the Court of Claims found that at the time of the requisition there was “a rising market and a strong demand for tugs of all types” in and around the Port of New York, due in part at least to the shortage of tugs resulting from the government’s requisitioning program.
It is not fair that the government be required to pay the enhanced price which its demand alone has created. *696 That enhancement reflects elements of the value that was created by the Urgency of its need for the article. It does not reflect what “a willing buyer would pay in cash to a willing seller,” United States v. Miller, supra, 374, in a fair market. It represents what can be exacted from the government whose demands in the emergency have created a sellers’ market. In this situation, as in the case of land included in a proposed project of the government, the enhanced value reflects speculation as to what the government can be compelled to pay. That is a hold-up value, not a fair market value. That is a value which the government itself created and hence in fairness should not be required to. pay.
Second. What we have said is in accord with our reading of the Report of the Advisory Board. Any enhancement of value must be deducted where it is due (a) “to the Government’s need of vessels which has necessitated the taking,” (b) “to the previous taking of vessels of similar type,” or (c) “to a prospective taking, reasonably probable. * * *”
The government’s need of vessels which has necessitated the taking is its need for the precise ship taken, for the type or class of ship taken, or for ships which perform the same or related functions. The government’s need for cargo vessels may affect indirectly the price level of many commodities. It may, for example, affect the price of rowboats. But if the government takes a rowboat, the enhancement to be excluded is that which results from the government’s activities in the particular market. It is the government’s demand in that market that is the measure of the “causes necessitating the taking or use” in this situation.
We also agree with the Advisory Board that the enhancement which is excluded is that which arises before as well as after the declaration of the national emergency of May 27, 1941. Section 902 (a) does not have any limiting factor so far as time is concerned. But we cannot say from this record whether any part of the $15,500 that the Court of Claims found to be the fair market value of the tug at the time of the taking includes any deductible enhancement in value. The Court of Claims found, to be sure, that there was no reasonable prospect of the condemnation of the tug and hence no enhancement in value due to that reason. Yet as we have seen, that is only one source of the enhancement in value which is deductible. There are no findings as to the effect on the market either of the previous taking, if any, of vessels of a similar type, or of the govern *697 ment’s need of vessels necessitating the taking, as we have construed it. The only findings at all relevant to these' factors are (1) that the increase in market values of “nearly all vessels in and about the Port of New York” between September 8, 1939- and May 27, 1941, was due to “the demand for vessels which followed the outbreak of war in Europe”; and (2) that such increase after May 27, 1941, and particularly after December 7, 1941, was due to “the Government’s need for vessels, which necessitated the taking of many vessels and to the great increase in shipping and in harbor traffic” during the war. These findings, however, are not sufficiently discriminating. They do not show the effect on the market of the government’s need for this particular ship, for this type or class of vessel, or for ships which perform the same or related functions. The findings as to the rising market for tugs in and about the Port of New York tell us that some of that enhancement is due to the government’s need. But we are left in the dark as to how much it may be.
In sum the findings do not tell us with sufficient particularity what was the effect of the government’s activities in the particular market. Nor do we know whether increases in value of the vessel up to March 19, 1942, when the United States sold it to respondent were reflected in the sale price. If they were, the United States has received any enhancement in value that resulted from its need up to that date.
Finally, respondent argues that the actual basis for the increase in value of the vessel between March and October, 1942 (the period when respondent owned it) is due to causes other than the government’s need. He points out that his total monetary expenditure on the vessel amounted to $8,574.78, of which $5,699.78 represented labor and materials. The latter amount, however, would have been substantially greater had not respondent himself performed part of the labor. Respondent plainly would be entitled to any increase in value due to that factor. Moreover, when respondent repaired and reconditioned the boat it was certificated as a towing steam vessel, a substantially new use for the tug. These two factors alone, plus the general price increase, are said to account for the $5,000 enhancement in value found by the Court of Claims.
We start with findings that tell us that some of the enhancement in market value is due to the government’s need. It is sheer speculation to say that there are *698 offsets against that enhancement which so reduce it as to render the construction of the Act an abstract question. Cf. Ashwander v. Valley Authority, 297 U. S. 288, 324. The inadequacies in the findings are due to the erroneous construction of the Act by the Court of Claims.
Mr. Chief Justice Vinson dissented.
Mr. Justice Frankfurter filed a dissenting opinion in which Mr. Justice Jackson and Mr. Justice Burton joined.