**CITY OF KETCHIKAN, ALASKA, a municipal corporation, Plaintiff,**

v.

**LOT 5, AND A PORTION OF LOT 4, BLOCK 6–A, H. J. Hanson, and Union Oil Company, Defendants.**

No. 3249.

District Court, Alaska
First Division, at Ketchikan.

Dec. 6, 1954.

**462**

Victor P. Guns, City Atty., and City Manager, Ketchikan, Alaska, for plaintiff.

A. H. Ziegler (of Ziegler, Ziegler & Cloudy), Ketchikan, Alaska, for defendant Hanson.

R. E. Robertson (of Robertson, Monagle & Eastaugh), Juneau, Alaska, for defendant Union Oil Co.

FOLTA, District Judge.

On October 22, 1952, the plaintiff brought this action to condemn a tract consisting of parts of two lots, for the purpose of widening the only street connecting the northern with the southern portions of the City of Ketchikan, and converting it into an arterial boulevard. The defendant Hanson, owner of the tract, operates a service station, garage and repair shop on the two lots referred to, and the defendant Union Oil Company claims a leasehold interest in the property by virtue of a lease for the period of 10 years, expiring on April 10, 1955, and a renewal thereof for a like period pursuant to the option to renew. The only questions presented concern the value of the tract, damage to the remainder thereof, and value of the leasehold.

Under local statutory provisions the valuation date is July 28, 1953. Since no demand was made for a jury trial the Court appointed a commission, pursuant to Rule 71A Fed.Rules Civil Proc., 28 U.S.C.A. On December 5, 1953, the Commission submitted its report, finding that the defendant Hanson was entitled to $60,000 for the land and the Union Oil Company $33,800 for its leasehold interest. In disregard of the rule enunciated in United States v. Petty Motor Company, 327 U.S. 372, 381, 66 S.Ct. 596, 90 L.Ed. 729, the Commission added instead of subtracted the amount awarded to the Union Oil Company. On January 4, 1954, the City gave notice of appeal pursuant to local law which allows a trial de novo on appeal. The defendants moved to dismiss and for entry of judgment pursuant to the findings of the Commission.

The testimony taken before the Commission was not reported, but since the record, such as it is, discloses manifest errors, and since the parties acted under a misapprehension as to what law governed, the Court on December 1 last, set aside the report of the Commission, tried the issues and viewed the property.

Widening the street as authorized would require severing the building at one end and taking one-third of the tract, leaving approximately four-fifths of the building standing, and an area of land comprising 2,660 sq. ft. The building, however, not only extends over this remaining area, but it is conceded by the City that, since it would be necessary for the owners to cut sufficient from the face of the building to allow for a double driveway and gasoline pumping and metering equipment, the remainder of the building would be valueless. It is undisputed that at present the site is perhaps the best in Ketchikan for a service station, but there is a dispute as to whether the area that would remain, viz., 2,660 sq. ft., would be sufficient for a service station limited to the dispensing of gasoline and the greasing of cars. I find, however, that the area is sufficient for those purposes.

The tract consists of tideland, title to which is in the United States in trust for the future state. The Court takes judicial notice of the fact that the waterfront arterial project was authorized in July, 1952, and that property values abutting on the street to be widened increased in value as a result of the contemplated improvement. No evidence, however, was adduced on the subject of special benefits, if any, that would inure to the remainder of the tract by reason of the improvement.

The tract was sold four months after the institution of this proceeding to the

defendant Hanson for $10,000, but it is stipulated that, for the purposes of this proceeding, he may be deemed the owner on July 28, 1953, the valuation date.

I find that the fair market value of the entire tract on July 28, 1953, after deducting accrued depreciation of 20% on the building and taking into consideration the state of the title, and that the fixtures consisting of the gasoline pumps, metering machines, the hoist, and other equipment used in connection with the operation of the business, is removable without substantial injury to the land, was $47,000; that the fair market value of the remainder of the tract, after allowing $4,000 for severance damages, was $11,000, from which I conclude that the defendant Hanson is entitled to compensation and damages in the sum of $36,000, less whatever may ultimately be found due the Union Oil Company.

So far as the interest of the Union Oil Company is concerned, it appears that it is not a leasehold interest. In 1945 the then owner leased the land to Laird and Shelton at $75 a month for 10 years, with an option to purchase and the right to renew for a like period. The lease contemplates the erection of a building and provides that all improvements shall become the property of the lessor if the lessees do not exercise the option to buy. A few months later Laird, having succeeded to the interest of Shelton, leased the premises to the Union Oil Company for the remainder of the term at the rental of $50 a month. The lease contains a provision for renewal for 10 years and provides that at the end of the term all improvements and equipment shall become the property of Laird. It appears that contemporaneously with the execution of this lease, the Union Oil Company lent Laird $5,000 for the erection of a building to house a garage and service station for the sale of its products. On May 18, 1948, Olson and Householder, assignees of Laird, sold to the defendant Hanson the business, with all the fixtures, equipment, etc. and franchises; the Laird lease, and the lease between the Union Oil Company and Olson and Householder. Two days later, the Union Oil Company entered into a lease with the defendant Hanson apparently identical with that previously entered into with his predecessors in interest, Olson and Householder, for $75 a month and expiring at the same time. Thus Hanson became the owner of the Laird lease covering the tract involved in this proceeding, and also of the business and property used in connection therewith.

Notwithstanding that the Court warned counsel several times during the trial that the evidence was insufficient to show the true nature of the Union Oil Company's interest, all the evidence which appears to be available was not produced and so the Court is able to do no more than adumbrate the scheme which appears to be the basis of the Union Oil Company's claim. It appears to be a well established policy of the company to obtain exclusive outlets for the sale of its products. Some measure of control over the property used in such business is obviously necessary to the attainment of that object. Accordingly the company financed the construction of the present building by advancing $5,000 and leasing the land from Laird to give it control of the use and occupancy thereof. Further control was obtained through the installation and leasing of the equipment used in the business for a rental of $75 a month. The defendant Hanson, who succeeded to the interest of Laird, pays the Union Oil Company the difference, between the rentals under the two leases, of $25 a month, with the understanding that this will be applied in discharging the indebtedness arising out of the loan. It is manifest that this arrangement for the amortization of the loan at $25 a month was made with an eye to retaining control as long as possible.

Projected against this background, the fact that each of these leases was for the term of 10 years, expiring April 10, 1955, with the right to renew for a like period, takes on considerable sig-

nificance. Equally significant, however, is the disparity between $300, the conceded rental value of the business per month, and the rental of $50 per month for the land and building. It would appear, therefore, that in the situation which has developed this arrangement would enable the Company to run with the hare and hold with the hounds. Considering these instruments together in their setting, I have no hesitancy in concluding that they are security instruments, from which it follows that the interest of the Union Oil Company in the tract here involved is that of an equitable mortgagee.

Upon depositing the amount of the award with the Clerk of the Court, the plaintiff may enter into the possession of the tract condemned, and upon payment by the defendant Hanson of the amount due the Union Oil Company on the loan referred to, or the filing of proof thereof, or upon delivery to the Clerk of the Court of an order from Hanson to pay the amount thereof to the Union Oil Company, the defendant Hanson will be entitled to receive the remainder of the award.

Findings of fact and conclusions of law and judgment in accordance herewith may be submitted.