THE COMMONWEALTH OF PUERTO RICO, ETC., Plaintiff and Appellee, *v.* EZEQUIEL PRIETO, Defendant; GERARDO BALDRICH GÓMEZ ET AL., Defendants and Appellants.

No. 11466. Argued May 9, 1956.—Decided October 9, 1956.

*Harry M. Besosa* for appellant Baldrich Gómez. *Montilla & Benítez & Arjona Siaca* for appellant Rodríguez Pacheco. *José Trías Monge, Attorney General,* and *Jaime J. Saldaña* and *Eduardo Negrón Rodríguez, Assistant Attorneys General,* for appellee.

MR. JUSTICE MARRERO delivered the opinion of the Court.

At the request and for the benefit of the Capital of the Island, the Commonwealth of Puerto Rico brought a condemnation proceeding on August 6, 1953, against Gerardo Baldrich Gómez, Ezequiel Prieto and Rafael Rodríguez Pacheco. The first was sued as owner of the lot and building to be condemned, the second as mortgagee, and the third as lessee of the property in question. The Commonwealth deposited, with the complaint, the sum of $46,390. Baldrich Gómez alleged that the real value of the property was $70,000 and moved that from the amount deposited the sum of $15,000 be delivered to the mortgagee. The court did so. Rodríguez Pacheco answered alleging that he was the lessee of the real property under a five-year lease executed on February 15, 1949, with an option to renew for another five years. He further alleged that (*a*) the difference between the real and reasonable value of the rent and the agreed rental was $2,566.80 per year for which reason he was entitled, because of that difference, to a compensation of not less than $12,834; (*b*) that he had installed wood shelving in the rented premises with a value of $2,000; and (*c*) that on account of the proximity of said premises to the stores of his best clients, and in view of the facilities of exhibition, loading and unloading, proximity to the docks, banks, etc., he would also suffer damages amounting to $5,000, all of which he was entitled to recover.

At the commencement of the trial the attorneys for the Commonwealth and those for Baldrich Gómez stipulated that the just compensation to be paid for the property to be condemned was the sum of $53,000. The issue was thus

confined to the lessee's claim. The lower court, after hearing the evidence introduced by the parties, rendered judgment ordering plaintiff to deposit the additional sum of $6,610, without interest, at the disposition of Baldrich Gómez, dismissed Rodríguez Pacheco's claim and ordered the clerk of the court to deliver to Baldrich Gómez $11,538.78 from the funds under his custody and to withhold the sum of $3,299.22 to answer for the property taxes.

■ Both Baldrich Gómez and Rodríguez Pacheco appealed. The former, however, has not filed any brief in support of his appeal. His appeal is therefore dismissed. The latter alleges that the lower court erred in denying compensation (1) for the difference between the real value of the leasehold and that paid according to the contract, and (2) for the prejudice caused to the lessee's property and business.

■ Rodríguez Pacheco's contention as to the first error is that since the lease contract was one for five years with an option for another five years, and since the leased property was condemned prior to the expiration of the first period, he was entitled to the difference between the real value of the use and occupancy of the building and the rental which he paid monthly, not only for the remainder of the original term of five years, but also for the entire period of the option. In this respect the trial court stated:

"We have no doubt that the term of the lease was for five years. The essential point in controversy consists in determining the terms of the option: to determine this question we must consider the testimony of the witnesses, and after weighing and analyzing it as a whole we conclude that Rodríguez Pacheco was bound to notify Baldrich of his intention to renew the lease 90 days prior to the expiration of the first period of five years if he wished to continue with the same for another five years.[1] . . .

---

[1] This last statement does not conform strictly to the evidence that the lower court had before it for Rodríguez Pacheco's statement in this respect was that he had "the privilege, once the five-year term expired,

if I did not find it convenient to continue with the business, of being under no obligation to continue with the lease for the second five-year term, notifying Mr. Baldrich 90 days in advance so that he could take the necessary steps in renting the premises to another person"; while Baldrich Gómez' statement was that "We discussed the terms and reached an agreement, namely, Mr. Rodríguez rented my premises for five years with an option for another five years, provided that at any time, sixty days in advance, Mr. Rodríguez could notify me that he would vacate the premises provided he did so sixty days in advance."

"Rodríguez Pacheco's right to renew the contract after the first five years did not convert him into a lessee for the second five years and, therefore, he had no right to dispose in any way of the premises by subletting them or selling his right to the premises. To allege that he failed to earn such and such amount because he was barred from continuing in the use of the premises during the second five years is mere speculation.

"Besides, we understand that in order for the lessee to exercise his option to renew the contract for another five years, it was necessary to meet the three fundamental requirements of a contract, namely, consideration, consent, and object.

"There is no doubt that the consent existed through the right obtained by means of the option; likewise, there existed the consideration, that is, the lessee's obligation to pay $3,000 yearly as rental; but the object no longer existed for its title was vested in the Commonwealth of Puerto Rico after October 7, 1953.

"Thus, when the time came for Rodríguez Pacheco to notify Baldrich that he had decided to renew the contract, if he had so chosen, which is a matter of speculation, one of the essential requirements would have been lacking, namely, the object.

"And this requirement was lacking, not through the lessor's fault, but because the Commonwealth of Puerto Rico had exercised its sovereign, unquestionable and inherent right of eminent domain, thereby extinguishing any obligation incurred by the lessor."

According to the evidence introduced by both the lessee and the lessor, the lease was a five-year oral contract with an option to renew for another five years, the rentals being paid at the end of each month.[2] Although Rodríguez Pacheco always insisted that the contract be put in a public deed, for reasons which we need not mention, such deed was never

executed. That did not prevent the contract from being binding on both parties.[2]

In the case of *The People of Puerto Rico* v. *Sociedad McCormick, Alcaide & Co., S. en C., etc., Floor Coverings of P. R., Intervener*, 78 P.R.R. 895, we elaborately set forth the rights of a lessee of a condemned immovable. In the course of the opinion we stated:

"The fact that the dominion title to condemned property is subject to a lease ordinarily has no effect on the compensation the government must pay for the dominion title. The value of the dominion title is determined and then the value of the leasehold is deducted therefrom . . . To the extent the lease impairs the value of the dominion title, the lessee must be compensated out of the amount which represents the full value of the dominion title, and not in addition thereto. . . .

" 'Provided the government makes a reasonable effort to join as defendants all persons who may have an interest in the condemned property, the government has no interest as such in the distribution of the compensation paid to the various claimants' . . . But as between Torres (lessor) and the government, Torres must pay such damages to Floor Coverings, provided the deposit constituted the market value of the dominion title. . . .

" . . . when the dominion title was condemned by the government in this case, the lessee became entitled to compensation for his leasehold interest even though the lease was not recorded in the Registry of Property. . . . We fail to see how § 1461 [Civil Code] can be read as increasing the obligations of the government toward a person with an unrecorded lease. To so hold would be in effect to grant more damages to such a lessee than to one whose lease was recorded. . . . The nature and

---

[2] Although the rentals were paid monthly, since a term was fixed for the lease the contract cannot be considered as a month-to-month contract. See § 1471 of the Civil Code, 1930 ed., 31 L.P.R.A., § 4092, which provides that: "Should a term not have been fixed for the lease, it is understood for years, when an annual rent has been fixed, for months, when the rent is monthly, and for days when it is daily.

"In every case the lease ceases without the necessity of a special notice upon the expiration of the term."

[3] Section 1230 of the Civil Code—31 L.P.R.A. § 3451—provides that: "Contracts shall be binding, whatever may be the form in which they may have been executed, provided the essential conditions required for their validity exist."

amount of the compensation to a lessee in a condemnation case does not depend on whether or not the lease was recorded; he receives the same compensation in both cases.

". . . . Generally speaking, where the entire balance of a leasehold is condemned, the lessee is entitled to '. . . the value of the use and occupancy of the leasehold for the remainder of the . . . term . . . less the agreed rent which the tenant would pay for such use and occupancy.' . . .

"The government '. . . must pay only for what it takes and not for opportunities which the owner may lose as the result of the taking . . .' "

We ratify our ruling there. Although this Court has held that "an option to lease is not a lease"—*Colón Rosich* v. *Registrar*, 42 P.R.R. 611—and that although the fact that the term of the lease contract together with the period of the option exceeds six years does not render the contract in itself recordable, yet, in condemnation proceedings the lessee is entitled to compensation not only for the remainder of the original term, but also for the term of the option granted. *United States* v. *Petty Motor Co.*, 327 U. S. 372, 90 L. Ed. 729; *Hercey* v. *Board of Chosen Freeholders of Essex County et al.*, 133 Atl. 872; 3 A.L.R. 2d 326.

■ However, in the case at bar there arises a special situation because, in the first place, as the lower court states in its opinion, the lessee "is still occupying the condemned premises," and in the second place, although the lessee clearly stated the rental he paid, he offered no evidence tending to show the real value of the use and occupation of the property which he possessed as such lessee. Considering this situation, the lower court did not err in dismissing his claim in this respect.[4]

---

[4] In view of the conclusion which we have previously reached, we need not discuss the scope and effect on the option of the agreement between the parties to the effect that Rodríguez Pacheco (according to the court's conclusion) "was bound to notify Baldrich of his intention to renew the lease 90 days prior to the expiration of the first period of five years if he wished to continue with the same for another five years." In view of the absence of proof concerning such matter, this case does not raise the same problem discussed in the *Floor Coverings* case *supra*, in connection with rent control.

■ Neither was the second error committed. The wood shelving and other appurtenances were not permanently fixed to the condemned property. They could be easily removed. The lessee was not, therefore, entitled to compensation therefor.[5] See *The People of Puerto Rico* v. *Sociedad McCormick, Alcaide & Co., S. en C., etc.; Floor Coverings of P. R., Intervener, supra; United States* v. *General Motors Corp.*, 323 U. S. 373, 89 L. Ed. 311, 319, where it was stated that the measure of just compensation to be paid by the condemnor does not include future loss of profit, the expense of moving removable fixtures and personal property from the condemned premises or "the loss of good-will which inheres in the location of the land," etc., as well as in *United States* v. *Petty Motor Co., supra*, at p. 378.

The appeal taken by Baldrich Gómez will be dismissed. As to the appeal of Rodríguez Pacheco, the judgment will be affirmed.[*]

Mr. Justice Belaval dissented.

---

## JUDGMENT

San Juan, Puerto Rico, December 28, 1956.

The motion for reconsideration filed by defendant Rafael Rodríguez Pacheco and the answer thereto filed by Gerardo Baldrich Gómez having been heard, our judgment of October 9, 1956 is set aside and a new judgment is entered instead, reversing, as to Rafael Rodríguez Pacheco, the judgment of the Superior Court of Puerto Rico, San Juan Part, rendered on May 6, 1954. The case will be remanded to the lower court in order to hear evidence only in connection with the value of the use and occupation of the property in litigation

---

[5] As we stated in *People* v. *Soc. Agric. Mario Mercado e Hijos*, 72 P.R.R. 740, 747, " . . . when the improvement is attached to the condemned realty, compensation must be granted to cover the costs of removal; . . ."

Here, the situation is altogether different since, as we have already said, the appurtenances could be easily removed.

[*] See judgment below.

during the rest of the option period, and to determine the difference, if any, to be paid to the lessee Rodríguez Pacheco, between the value of that use and occupation and the rental, object of the contract, during such period. As to codefendant Gerardo Baldrich Gómez, his appeal is dismissed.

It was so decreed and ordered by the court as witness the signature of the Chief Justice. Mr. Justice Negrón Fernández, Mr. Justice Sifre and Mr. Justice Belaval dissented.

A. C. SNYDER
Chief Justice

Certify:

JOAQUÍN BERRÍOS
       Acting Secretary