UNITED STATES of America, Appellant,

v.

41,098.98 ACRES OF LAND, MORE OR LESS, situate IN SIERRA, ET AL., COUNTIES, STATE OF NEW MEXICO, and Estelle E. Withers, et al., Appellees.

No. 76–1096.

United States Court of Appeals,
Tenth Circuit.

Argued and Submitted Nov. 18, 1976.
Decided Feb. 8, 1977.

John J. Zimmerman, Atty., Dept. of Justice, Washington, D. C. (Peter R. Taft, Asst. Atty. Gen., Edmund B. Clark, and Donald E. Strouse, Attys., Dept. of Justice, Washington, D. C., with him on the brief), for appellant.

Harold L. Hensley, Jr., of Hinkle, Bondurant, Cox & Eaton, Roswell, N. M., for appellees.

William O. Jordan, Counsel, Commissioner of Public Lands, Santa Fe, N. M., for appellee, State of New Mexico.

Before SETH and HOLLOWAY, Circuit Judges, and CHILSON, Senior District Judge.*

PER CURIAM.

This is a condemnation suit brought by the United States ". . . at the request of the Secretary of the Army . . . ." The complaint further states that the property is to be taken ". . .. in connection with the White Sands Missile Range in New Mexico . . . ." The interest to be acquired by the United States is an "estate for years." The landowners are for the most part ranchers who own fee lands or hold grazing leases from the State of New Mexico on state lands or lease fee lands of others. The State of New Mexico is also named as a defendant.

The issue on this appeal concerns only the condemnation award which should be paid to appellees as grazing lessees of state lands. The State of New Mexico makes no claim to any part of the award as it pertains to state lands, and asserts it should be paid to its lessees.

The Commission award approved by the trial court was wholly to the appellees as grazing lessees of state lands. The valuation of the estate taken was on a carrying capacity basis and in relation to the use of the lands taken and the use of such lands in conjunction with fee lands of appellees as part of the ranch. The trial court stated that it . . .

". . . [R]eaffirm[ed] its past position that compensation is to be based on a valuation formula which includes both the State owned lands leased by the defendants as well as the fee lands of the defendants as one ownership unit. Furthermore, the Court hereby denies the Government's motion of December 18, 1974, and categorically rules that the defendants who have grazing leases of State owned tracts have compensable interests therein, that said defendants are to receive, upon distribution of the proceedings [sic], the condemnation award for the lands they have leased from the State. And, finally, that the leases of the State owned tracts executed or renewed by the State of New Mexico after July 1, 1970, created in the lessee a property compensable in these proceedings."

The Government has taken this appeal urging that the trial court was in error in its instruction to the Commission as to the method of valuation. The Government also urges that the case be remanded to the trial court for a determination of reasonable rental value of the lands for grazing on the theory that the case of *Alamo Land & Cattle Co., Inc. v. Arizona,* 424 U.S. 295, 96

* Of the District of Colorado, Sitting by Designation.

S.Ct. 910, 47 L.Ed.2d 1, requires such a determination.

The state grazing lease held by appellees on the tract condemned was for a five-year term as provided in the New Mexico Enabling Act, and was issued under statutory authority. N.M.S.A. § 7–8–2. The lessee had a preference right for renewal under N.M.S.A. § 7–8–51, which for all practical purposes was an absolute right as against other applicants. This state lease on the land condemned was to expire on September 30, 1972. The United States filed a declaration of taking on July 1, 1970; thus the remaining term of appellees' lease had about twenty-seven months before expiration. Under state law the lessee had to file an application for renewal before August 1, 1972.

It is difficult to characterize the estate sought to be condemned by the United States. The complaint and the declaration of taking describe it to be:

"The estate taken for said public uses is a term of years beginning July 1, 1970 and ending June 30, 1971, extendible for yearly periods thereafter, at the election of the United States, until June 30, 1980, notice of which election shall be filed in the proceeding at least thirty (30) days prior to the end of the term hereby taken, or subsequent extensions thereof, together with the right to remove, . . . ."

Thus the first year is specified, but the year-to-year taking thereafter is subject to the giving of thirty days' notice. It appears to be a term of one year followed by a series of options, each for an additional year. The record shows that deposits were made by the Government year by year as the options were exercised. The taking limited the total number of option years. The Government made the deposit of estimated compensation with the court each year, as indicated above, and this was drawn down by appellees without limitation.

The five-year term of the state grazing lease was to expire on September 30, 1972. The year-by-year option periods acquired by the Government ended June 30th of each year. The state lessee, as the expiration date of his lease approached, did not know whether the Government would exercise its option for an additional year or not, and it was obvious that his lease could expire without the Government having exercised its option. The State of New Mexico could not tell whether the options would be exercised. The Government also could not tell in advance, and this is the apparent reason for a year-to-year option. Under these circumstances, it is apparent that the state lessee had to apply for a renewal of the lease, and the State under the statutory provisions had to proceed to handle the application as any other. It was obvious that all concerned had to adapt to the Government's understandable inability to foresee its future needs for the land more than a year at a time. The consequences of the expiration of the state lease in relation to the exercise or nonexercise of its option was equally apparent to the Government.

The initial state grazing lease was issued in accordance with state law and regulations, including appraisals. The renewal of the initial lease was also made in accordance with the same requirements. The State of New Mexico takes the position that the initial lease and the renewal lease were valid in all respects. The state lessee under this showing has met the burden of proof in a condemnation case as to "ownership." Furthermore, in the trial court the Government presented no evidence whatever to show that the leases were not valid. The Government now argues to this court that there should be a remand.

There is no trust relationship between the lessee and the Government. However, on this appeal the Government seeks to attack the lease as a violation of trust by the state under the New Mexico Enabling Act, or under the Arizona Enabling Act, and thereby seeks to invalidate the lease. The particular point urged in this attack on the lease is that the rentals were not fixed at a fair rental value and this was contrary to the trust relationship created when the lands were granted by the United States to New Mexico. The basic problem with the

**914**

Government's position is that it is based on the Arizona Enabling Act and on *Alamo Land & Cattle Co., Inc. v. Arizona*, 424 U.S. 295, 96 S.Ct. 910, 47 L.Ed.2d 1, which was also concerned only with the Arizona Act. The Arizona and New Mexico Acts were in part combined (36 Stat. 557), but there have been substantial changes in the Arizona Act since the passage of the combined Act. (49 Stat. 1477). The New Mexico Enabling Act, on the other hand, has not been changed in this respect, and its Section 10 is entirely different from the Section 28 of the Arizona Act.

█ Of fundamental importance is the provision in Section 10 of the New Mexico Act that the Attorney General of the United States is to bring an action to enforce the fiduciary duties assumed by New Mexico under the Act if there be a violation. The paragraph in Section 10, 36 Stat. 557 (Ch. 310), reads:

"It shall be the duty of the Attorney General of the United States to prosecute in the name of the United States and its courts such proceedings at law or in equity as may from time to time be necessary and appropriate to enforce the provisions hereof relative to the application and disposition of the said lands and the products thereof and the funds derived therefrom."

Thus the remedy is provided, and this under the structure of the Act and as compared to others, is the way in which Congress provided that the Government could challenge the actions of New Mexico in carrying out the trust. This is indeed an effective and easily available remedy. The starting phrase, "It shall be the duty of the Attorney General . . . ," is, in our opinion, a significant choice of words. This remedy, in this context, must be considered to be the exclusive remedy. A collateral attack in condemnation proceedings on the lessees' ownership, as here attempted, does not properly raise an issue. The grazing leases here concerned thus must be considered to be valid in the absence of special proceedings against the state by the Attorney General brought under the Enabling Act. As indi-cated above, all the procedural and statutory requirements were followed in the leasing, including appraisals.

The Government's reliance on the *Alamo* case is misplaced because it concerned only the Arizona Act which is different in the material portions here concerned. The *Alamo* case was a dispute between the state lessee and the State of Arizona as to the division of the condemnation award. The Arizona Act handles leasing by the state in a different manner and provides in substance that a lease is void if not given for "fair value." The Supreme Court relied on this language and remanded. However, there is no such provision in the New Mexico Act or anything similar, contrary to the Government's argument (see Section 10). A different method and conditions are provided for leasing in New Mexico, and these were followed here. The provisions of the Arizona Act are not pertinent. The Enabling Acts for different states are substantially different. The Supreme Court in *Alamo* was only concerned with the Arizona Act, and especially the 1938 changes. Thus the trial court was not called upon to make a determination as to fair value. The New Mexico Act makes no such requirement nor does the *Alamo* opinion.

█ The only issue was the valuation of the estate taken in view of the interest of the state's lessee in the lands taken. *United States v. Petty Motor Co.*, 327 U.S. 372, 66 S.Ct. 596, 90 L.Ed. 729. The United States deposited the estimated compensation in the condemnation proceedings on a year-by-year basis as it exercised its options. It was obvious that the lease from the state to the grazing lessee would have to be renewed, and the preference right survived. The estate sought by the Government made this apparent to all concerned, and we must assume that it was contemplated by the Government. The money deposited in the condemnation proceedings was released to the lessee without limitation. The Government on this appeal seeks to raise an issue as to the Assignment of Claims Act, 31 U.S.C. § 203. We find no basis for the application of the Act under

these circumstances. There was and is only one person entitled to the award. Also the renewal was within the contemplation of the parties, and the funds were paid into court and released without limitation to the lessee. *See Bank of California v. C.I.R.*, 133 F.2d 428 (9th Cir.).

The Government after trial sought to assert a defense of rental abatement by the argument that the lessee had not given exclusive possession to the Government. The trial court was correct in its denial of this defense or issue sought to be raised by what would have been a posttrial amendment. In any event, it was an extraneous issue in this condemnation action. *See Toles v. United States*, 371 F.2d 784 (10th Cir.).

We have examined the instructions given by the trial court as to the method of valuation to be followed by the Commission, and find no error. They are in accordance with established law and practice. See the trial court's memorandum opinion. *See Olson v. United States*, 292 U.S. 246, 54 S.Ct. 704, 78 L.Ed. 1236. The Supreme Court, in *United States v. Fuller*, 409 U.S. 488, 93 S.Ct. 801, 35 L.Ed.2d 16, stated that the use of other lands could be taken into consideration in condemnation. The issue is really only under *Olson* whether the combination of the lands "was practical." In *United States v. Fuller*, 409 U.S. 488, 93 S.Ct. 801, 35 L.Ed.2d 16, the Court did not require separate valuations but again a consideration of the tracts together was approved. In *Fuller* the value of Taylor Act use with fee lands was considered. The trial court's instructions as to methods of valuation were in accordance with the controlling authorities.

We find no error, and the case is AFFIRMED.