**UNITED STATES of America, Plaintiff-Appellant,**

**v.**

**12.18 ACRES OF LAND IN JEFFERSON COUNTY, KANSAS, Atchison, Topeka and Santa Fe Railway Company, et al., Defendants,**

**Reichart Elevator Company, Jefferson County Cooperative, Henry Frommer, Ross Price, Farmers Union Cooperative, Intervenors-Appellees.**

No. 78–1975.

United States Court of Appeals, Tenth Circuit.

Argued March 20, 1980.

Decided June 6, 1980.

Rehearing Denied July 17, 1980.

Jacques B. Gelin, Atty., Dept. of Justice, Washington, D. C. (James W. Moorman, Asst. Atty. Gen., Washington, D. C., James P. Buchele, U. S. Atty., and Roger M. Theis, Asst. U. S. Atty., Topeka, Kan., Aaron S. Bennett and Robert L. Klarquist, Attys., Dept. of Justice, Washington, D. C., with him on the brief), for plaintiff-appellant.

Gordon K. Lowry, Valley Falls, Kan. (Rick A. Johnson, Valley Falls, Kan., with him on the brief), of Lowry & Johnson, Valley Falls, Kan., for intervenors-appellees.

Before SETH, Chief Judge, and DOYLE and McKAY, Circuit Judges.

SETH, Chief Judge.

This is a condemnation proceeding wherein the Government acquired title to a 12.18-acre tract in the Perry Lake Project in Kansas. This land was a part of the right-of-way of the Atchison, Topeka and Santa Fe Railway. The appeal concerns only the value of improvements of lessees of the railroad. The railroad pursuant to an agreement with the Government in 1966 relocated its tracks and terminated appellant's leases because of the reservoir to be built. The condemnation suit was not filed until 1974.

The trial court permitted the appellants to intervene in the condemnation suit, and the value of their improvements on the leaseholds was submitted to the Commission. The Government has appealed the award to intervenors approved by the trial court.

In 1966, the Government and the Atchison, Topeka and Santa Fe Railway Company entered into the agreement described above whereby the railroad agreed to move its roadbed so that it would not interfere with the construction of a reservoir. The railroad was to be paid an agreed amount. To carry out the move and agreement the railroad gave lease termination notices to its lessees along the segment of the right-of-way to be turned over to the Government. These lessees and their predecessors had been in possession for many years and buildings and other improvements had been built on the leaseholds. These leases provided for termination without cause on thirty days' notice. The lessees under the terms of the lease could salvage their improvements.

Notices of termination were given to the lessees by the railroad in April 1968 and September 1969. The notices effectively ended the leases. In 1974, the Government commenced condemnation proceedings which named the railroad and others who had an interest in the land to be acquired. This land was what had been the railroad right-of-way and included the land formerly leased to the intervenors. This complaint did not name the former lessees of the railroad. These parties sought to intervene about five months after the proceedings commenced asserting that they were entitled to the value of their improvements on the terminated leaseholds.

The trial court permitted intervention by the former lessees, referred their claims to the Commission, the claims were valued, and the award approved by the court. The basic question on appeal is whether the intervenors had a compensable property interest in the condemnation action. The resolution of this question depends in large measure on the application of *Almota Farmers Elevator & Whse. Co. v. United States*, 409 U.S. 470, 93 S.Ct. 791, 35 L.Ed.2d 1, and *United States v. Petty Motor Co.*, 327 U.S. 372, 66 S.Ct. 596, 90 L.Ed. 729.

Under the sequence of events recited above it is apparent at the time the condemnation was commenced the intervenors' leases had ended. They had been terminated some four or five years before, and the intervenors had removed the improvements. The leases were terminated pursuant to a provision in the railroad-Government agreement which required the right-of-way to be free of encumbrances. The intervenors thus lost their leases and access to the railroad by reason of the agreed move of the right-of-way in contemplation of completion of the project. Condemnation came thereafter. The record shows that the leases had been renewed and extended as a matter of course for many years. The lessees had provided business for the railroad and the railroad service benefitted the lessees.

The trial court ruled that *Almota Farmers Elevator & Whse. Co. v. United States*, 409 U.S. 470, 93 S.Ct. 791, 35 L.Ed.2d 1, controlled, and the lessees were thereby entitled to compensation for their improvements. The court indicated that the railroad and the Government had handled the removal of the right-of-way to a new location in a manner whereby the need to compensate the intervenors was sought to be avoided.

The railroad-Government agreement was entered into at a time when the leases of intervenors were in good standing. The

agreement required, in substance, that the leases be terminated in contemplation of the move of the right-of-way. At the time the agreement was executed it is apparent that the Government was committed to the project and its scope had been defined. It was likewise apparent that the leaseholds in question would be part of the area which would ultimately have to be condemned. The Government, in substance, had the railroad remove the lessees rather than to condemn.

The period of time involved is long, but the method was apparent. We must hold that the "taking" was the same as it was in *Almota Farmers Elevator & Whse. Co. v. United States*, 409 U.S. 470, 93 S.Ct. 791, 35 L.Ed.2d 1, for the purpose of compensation. There, the concern was also with elevators on railroad leases along the right-of-way.

In *Almota* the Court noted that the taking of both estates was "one act" which required proceedings against owners of two interests. Here, the method of taking was altered by the agreement but the substance and purpose were the same. The railroad's title had vested in the Government in the case before us, which is a different sequence than in *Almota*.

In *Almota* the Court stated:

"At the time of that 'taking' Almota had an expectancy of continued occupancy of its grain elevator facilities. The Government must pay just compensation for those interests 'probably within the scope of the project from the time the Government was committed to it.' *United States v. Miller*, 317 U.S. [369], at 377 [, 63 S.Ct. 276, at 281, 87 L.Ed. 336]. Cf. *United States v. Reynolds*, 397 U.S. [14], at 16–18 [, 90 S.Ct. 803, at 805–06, 25 L.Ed.2d 12]. It may not take advantage of any depreciation in the property taken that is attributable to the project itself."

We hold that the "interests" of the intervenors, as that term is used in *Almota*, existed at the time the agreement with the railroad was signed. For all practical purposes the "one taking" took place at that time. The agreement was to acquire the right-of-way and the leaseholds. The only real differ-

ence was the time span. Thus we equate the agreement with the taking in *Almota* for it had the very same purpose. We use the references in *United States v. Miller*, 317 U.S. 369, 63 S.Ct. 276, 87 L.Ed. 336, to the critical time for value. The Court there said:

"If, in the instant case, the respondents' lands were, at the date of the authorizing Act, clearly within the confines of the project, the respondents were entitled to no enhancement in value due to the fact that their lands would be taken. If they were within the area likely to be taken for the project . . . ."

Thus it would appear that if value changes don't count, then artificial and planned "interest" changes made by the Government should not count. We thus apply *Almota* as did the trial court. It is apparent that the sequence of events is somewhat different in the two cases, but again the substance is not. It looks different due to a large part to the stretched out time periods and the dollar motivated rearrangement of the "interests." The consequential damage cases urged by the Government, *Mitchell v. United States*, 267 U.S. 341, 45 S.Ct. 293, 69 L.Ed. 644, and *Omnia Co. v. United States*, 261 U.S. 502, 43 S.Ct. 437, 67 L.Ed. 773, and the Taylor Act case of this court, *United States v. Cox*, 190 F.2d 293 (10th Cir.), are not applicable. We do not consider that *United States v. Petty Motor Co.*, 327 U.S. 372, 66 S.Ct. 596, 90 L.Ed. 729, is controlling, as the Government urges, in view of the holding in *Almota*.

We also conclude that the permitted intervention, the approval of the award by the trial court, and the procedures of the Commission were proper.

AFFIRMED.